## The Kankakee and Seneca Railroad Company *et al.*

*v.*

## Owen Horan.

*Filed at Ottawa January 21, 1890.*

1. ACTIONS—*for injury to reversionary interest in land.* In an action on the case for an injury to real estate, consisting of a farm, the plaintiff, by his declaration, claimed an estate in reversion after the expiration of a then existing tenancy. The counts then alleged the construction and maintenance by the defendants of a railroad and its appurtenances, consisting of permanent embankments, ditches, bridges, etc., by means of which the waters of a certain slough or water-course were and would be permanently dammed up, diverted to, and caused to set back upon and overflow said farm, thus creating a permanent nuisance to and upon the farm, by reason of which nuisance the plaintiff had suffered injury and damage to his estate in reversion: *Held,* on motion in arrest of judgment, that the declaration showed a cause of action for damages to the plaintiff's reversionary interest.

2. In such case, the declaration will not be insufficient on motion in arrest of judgment, merely because it does not allege that the tenancy has terminated, or how long it will continue. An injury to land which is permanent in its nature is necessarily an injury to the entire estate, which includes the reversion.

3. The estate in possession, its nature and duration, and the amount of rent reserved, if any, are material matters to be considered in the assessment of damages in favor of the owner of the reversion; but they are immaterial when the question is merely as to the sufficiency of the declaration to show a cause of action, or to warrant a recovery of any damages.

4. SAME—*of a continuing or permanent injury.* Road-beds, embankments, trenches, bridges, culverts, and other appurtenances of a railroad constructed and maintained in pursuance of lawful authority, are to be regarded, in law, as permanent structures,—not because they may not be changed, but because the railway corporation has the legal right to maintain them forever. Therefore, such a nuisance is a permanent one, so that all damages for past and future injury to the property may be recovered in one suit, and the recovery is a bar to all future actions.

5. SAME— *tort feasors—several liability.* All who contribute to a tort, even by their wills, alone, and more especially all who contribute by their acts, even though in an inferior degree, are, whether they are personally present or absent at the doing, liable to the person injured, each for the entire damages.

6. So where a railway company organizes another as a mere instrument to carry into execution a plan of its own, and for its own benefit, and such company, thus organized, accomplishes the purpose intended, and in so doing inflicts an injury upon the property of another, both companies may be liable.

7. MEASURE OF DAMAGES—*injury to reversion—tenancy at will.* Where the plaintiff is the owner of a tract of land in the occupancy of a tenant, who holds at his will, he may sue for and recover for damages caused to the land by the construction of a railroad over the same, and causing a stream over the same to overflow, and the proper measure of his damages will be "the depreciation in the market value of said farm by reason of" such overflow. Such a tenancy is not such an estate as to require an apportionment between it, and the reversion of the damages arising from the depreciation of the market value of the land.

8. TENANCY AT WILL—*what will constitute—rights of the landlord and of the tenant.* Where the owner of land allows another to take possession of and cultivate the same for his own use, and to make out of it what he can, no time being fixed for the duration of such possession, and no rent being reserved, agreed on or in fact paid, this will create but a tenancy at will, liable to be determined by the owner at any instant, subject only to the tenant's right to the emblements, in case of there being growing crops.

9. ADMISSION *by demurrer—the extent of it.* The plaintiff, by introducing in evidence a bill in chancery filed by his adversary, and to which he has demurred, does not thereby admit that all the allegations of such bill are true. A demurrer is an admission of the truth of all matters well pleaded, but only for the purpose of testing, judicially, the sufficiency of the pleading, unless it appears the party elected to abide by his demurrer, and suffers the bill to be taken as confessed.

10. WATER-COURSE—*upper riparian proprietors.* It is the legal right of any one along the line of a natural stream of water, to drain into it the waters which naturally shed into it, and no one owning land along such stream will have a right of action against such a person so draining water into it above him, for any damage done to his inheritance by means of the increased flow of water caused thereby.

11. A party in constructing bridges or culverts across a slough of running water on the land of another, must anticipate that upper riparian proprietors may, by drainage, increase the flow in such stream, and provide against such increased flow by giving room enough for it to pass along its accustomed channel.

12. EVIDENCE—*question of damage to land—from obstructing water-course—maps and plats admissible.* In an action against a railway company to recover damages caused to the reversion by the building of a railroad track, embankments, bridges, etc., over the land, and obstruct-

19.—131 .ILL.

ing the wonted or accustomed passage of the water along its former way, and flooding the land, the court, on the trial, after certain maps and plats of the premises had been identified, and shown to be substantially correct, admitted the same in evidence: *Held*, no error to admit the papers to the jury, to be considered with the other evidence.

13. SAME—*opinions of witnesses—as to depreciation of value of land—by reason of overflow.* In case to recover damages to the reversionary interest of the plaintiff in a farm then occupied by his son as his tenant at will, caused by the obstruction of a water-course over the land by railway bridges and other works, it is proper to allow the plaintiff's witnesses to give their opinions as to the market value of the land before and after the railroad was built, and to state that the depreciation in value shown by their testimony was caused by the overflow of water resulting from the construction of the road. The depreciation in the market value of land, arising from a permanent injury thereto, is the proper measure of damages to the owner.

14. SAME—*bill in chancery in another suit relating to the same matters.* On the trial of an action against a railway company, to recover damages to land by the construction of a railroad and appurtenances over the same, the court allowed the plaintiff to read in evidence the bill of complaint filed by one of the defendants to enjoin the prosecution of this and another suit: *Held*, that as the bill related to the same subject matter of litigation, and contained various averments as to matters of fact involved in the suit being tried, it was properly admitted in evidence.

15. SAME—*res gestæ—hearsay.* In a joint action on the case against two railway companies, to recover damages for the negligent manner of constructing the road and its appurtenances, the defendants offered in evidence two mortgages executed by one of the defendant companies, for the purpose of showing it had the means to build the road complained of, and was the principal actor therein, which the court refused: *Held*, that the execution of such mortgages did not form any part of the *res gestæ* of the construction of the road,—that both the execution of the mortgages and the recitals therein were purely *res inter alios acta*, and therefore not competent evidence against the plaintiff.

16. SAME—*injury from negligence in constructing railroad—evidence to show what company built the road.* For the purpose of showing that one of two railway companies sued for damages resulting from the negligent manner in which the road and appurtenances were constructed did in fact build the road, the defendants offered to show that such company did have control of the requisite funds to enable it to construct the same: *Held*, that such evidence would not tend to establish the fact that the latter company did construct the road, in the

absence of evidence tending to show the specific appropriation of such money to the purpose of building it.

17. SAME—*testimony of deceased witness—how shown.* The testimony of a deceased witness, given on a former trial, can not be shown by the bill of exceptions taken at that trial. If the testimony of a deceased witness is not preserved in the record of the suit wherein it is sought to be used, this court can not pass on its materiality.

18. APPEALS—*reviewing the facts.* In an action on the case for an injury to the reversion, in obstructing the natural flow of a water-course over the plaintiff's land, when a judgment in favor of the plaintiff is affirmed by the Appellate Court, this court, on appeal or error, must regard all the substantial allegations of the declaration, as to the nature, cause and extent of the injury, as being conclusively established, and if the action and recovery are against more than one party, it must take it that the defendants were jointly liable.

19. ERROR WILL NOT ALWAYS REVERSE—*admission of evidence.* The improper admission in evidence of a passage from the defendant's petition for a change of venue, to prove a fact abundantly established by other unobjectionable evidence, and as to which there was no serious controversy, is no ground for reversal.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Grundy county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. G. S. ELDREDGE, for the appellants:

The declaration states no cause of action for damages to a reversionary interest, and the motion in arrest of judgment should have been sustained.

No correct rule of damages was submitted to the jury. The true measure depended on the nature and extent of the plaintiff's interest. If subject to an outstanding tenancy, this would affect its value more or less. *Jackson* v. *Pirked,* 1 M. & S. 234.

The consideration paid for the plaintiff's deed of the right of way must be held to include all damages to the farm, resulting inevitably from the construction and ordinary use of the railroad, including such obstruction to the ordinary drainage of surface waters upon the farm which could not be obviated by the exercise of ordinary skill in the construction.

*Fitch* v. *Johnson,* 104 Ill. 121; *Hadden* v. *Shoutz,* 15 id. 581; *Railroad Co.* v. *Cox,* 91 id. 500; *Conwell* v. *Railroad Co.* 81 id. 232; *O'Connor* v. *Railroad Co.* 52 Wis. 526; *Randle* v. *Railroad Co.* 65 Mo. 333; *Railroad Co.* v. *Loeb,* 118 Ill. 203; *Hill* v. *Railway Co.* 109 Ind. 511; *Railroad Co.* v. *Stephens,* 73 id. 378; *Railroad Co.* v. *Henry,* 79 Ill. 290, and other cases cited; Mills on Eminent Domain, sec. 115; Sutherland on Damages, 291.

The Cincinnati, Indianapolis, St. Louis and Chicago Railway Company can not be held liable for damages resulting from any acts committed by the Kankakee and Seneca Railroad Company in the construction of the railroad, which accrued prior to the time the former commenced operating the road. Nor can the Kankakee and Seneca Railroad Company be made liable for any specific acts done by the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company after the latter company commenced operating the road, without its co-operation or approval, unless it be shown that it leased the road, or made some contract by which it was to receive a pecuniary advantage from the commission of the alleged unlawful acts, or parted with its property, guaranteeing the right to do the particular acts complained of. *Hanse* v. *Cowing,* 1 Lans. 288; *Walsh* v. *Mead,* 8 Hun, 386; *Swords* v. *Edgar,* 59 N. Y. 28; *Leonard* v. *Storer,* 115 Mass. 86; *Stone Road* v. *Railroad Co.* 51 N. Y. 573, and cases there cited; *Railroad Co.* v. *Magruder,* 34 Md. 310; *Graff* v. *Ankenbrandt,* 124 Ill. 51; *Railroad Co.* v. *Loeb,* 118 id. 203; *Hill* v. *Railway Co.* 109 Ind. 511; *Railroad Co.* v. *Stephens,* 73 id. 378.

The Kankakee and Seneca Railroad Company had the constitutional and lawful right to cross the Parker slough, and, if necessary, to change the course of the slough, if it did it in a manner prescribed by the statute. Rev. Stat. title "Railroads," sec. 20, par. 5; Angell on Water-courses, (6th ed.) secs. 465b, 465c, 465d, and cases cited; *Bellinger* v. *Railway Co.* 23 N. Y. 42; *Morrison* v. *Railway Co.* 67 Me. 353; *Mor-*

*ris* v. *Railway Co.* 28 Vt. 99 ; 1 Sutherland on Damages, 191 ; 3 id. 433 ; *Babcock* v. *Railway Co.* 9 Metc. 553 ; *Railway Co.* v. *Henry*, 79 Ill. 290 ; *Menkeiss* v. *Railway Co.* 72 Mo. 514 ; *Railway Co.* v. *Bethel*, 11 Bradw. 17, and cases cited ; *Ellett* v. *Railway Co.* 76 Mo. 518 ; *Railway Co.* v. *Parker*, 50 Texas, 530 ; *Abbott* v. *Railroad Co.* 83 Mo. 271.

There was no occasion to remove any obstructions, either on or off of the plaintiff's premises. All he was required to do was to provide means for the escape of the water, which could have been done at a small expense, and this is the limit of his recovery. *Railroad Co.* v. *Carey*, 90 Ill. 514 ; *Miller* v. *Railroad Co.* 31 Mo. 262 ; *Seely* v. *Alden*, 61 Pa. St. 302 ; *Carl* v. *Railroad Co.* 46 Wis. 645 ; *Blerch* v. *Railroad Co.* 43 id. 183 ; *Pettibone* v. *Railroad Co.* 14 id. 444 ; *Ford* v. *Railroad Co.* id. 609 ; *Bare* v. *Hoffman*, 79 Pa. St. 71 ; *Railroad Co.* v. *Kernodic*, 54 Ind. 314 ; *Mumford* v. *Railway Co.* 36 Eng. L. & Eq. 850 ; *Brower* v. *Chandler*, 3 Wis. 46 ; *Uline* v. *Railroad Co.* 101 N. Y. 98, and cases there cited ; *Pond* v. *Railway Co.* 112 N. Y. 186, and cases cited ; Field on Damages, 592-602 ; 1 Hilliard on Torts, 608, sec. 18 ; 1 Sutherland on Damages, 193 ; 3 id. 433.

The record shows that the jury, under the instructions of the court, assessed the damages at one-half of the present value of the farm, placing the value at the maximum fixed by the most enthusiastic witness—$30 per acre for two hundred and forty acres, $7200—as if the plaintiff were in possession and no outstanding tenancy in Frank Horan. The plaintiff is an old man,—seventy years of age and upward,—and his son is in possession under a tenancy for life. The only measure of damages, under the declaration, would be the damages to the reversionary interest, whatever that might be worth, and not the depreciation in the present value of the land. 3 Sutherland on Damages, 392 ; *Randall* v. *Cleveland*, 6 Conn. 328 ; *VanDusen* v. *Young*, 29 N. Y. 9 ; *Shadwell* v. *Hutchinson*, 2 B. & A. 97 ; *Dutro* v. *Wilson*, 4 Ohio, 101 ; *Larkin* v. *Goodsall*, 2

Peake, 15; *Baxter* v. *Taylor*, 4 B. & A. 72; *Funkman* v. *Newman*, 11 A. & E. 40; *Harder* v. *Harder*, 26 Barb. 409; *Agate* v. *Lowenstein*, 6 Daly, 291; *Dickinson* v. *Ballmer*, 48 Md. 483; *Ayer* v. *Bartlett*, 9 Pick. 156; 1 Chitty's Pl. 395, 406, 407; 1 Addison on Torts, 315.

Mr. S. C. STOUGH, and Mr. R. M. WING, for the appellee:

The declaration shows an injury to the plaintiff's reversion. The fifth count is substantially the form given by Chitty in his second volume of Pleading, (11th Am. ed.) 777.

Frank Horan was a mere tenant at will. *Dunne* v. *Trustees of Schools*, 39 Ill. 578; *Herrell* v. *Sizeland*, 81 id. 457; *Whoon* v. *Drizzle*, 3 Dev. L. 414; *Hull* v. *Wood*, 14 M. & W. 682.

Even payment of rent by the tenant does not change the character of the tenancy, unless it is paid with reference to a yearly holding. *Hull* v. *Wood*, 14 M. & W. 682; *Baston* v. *Cox*, 112 B. 122; *Rich* v. *Bolton*, 46 Vt. 84.

Neither is a tenant at will entitled to notice to quit. *Dunne* v. *Trustees of Schools*, 39 Ill. 578; *Jackson* v. *Brodt*, 2 Caines, 169; Wood on Landlord and Tenant, secs. 18, 19.

The testimony of a deceased witness upon a former trial can not be shown by a bill of exceptions. *Railroad Co.* v. *Keep*, 22 Ill. 9; *Roth* v. *Smith*, 54 id. 431; *Stern* v. *People*, 102 id. 542.

The depreciation in value of property, arising from the infliction of a permanent injury upon it, is the proper and legitimate measure of damages to the owner. *Railroad Co.* v. *Grabill*, 50 Ill. 241; *Railroad Co.* v. *Baker*, 73 id. 316; *Railroad Co.* v. *McGinnis*, 79 id. 269; *Railroad Co.* v. *Hall*, 90 id. 42; *Railroad Co.* v. *Carey*, id. 514.

The bill in chancery being between the same parties and relating to the same matters as in the suit, was evidence against the defendants. *Robbins* v. *Butler*, 24 Ill. 387; *Burnham* v. *Roberts*, 70 id. 19; *Railroad Co.* v. *Horan*, 17 Bradw. 650; 22 id. 145; 23 id. 259.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action on the case, brought by Owen Horan against the Kankakee and Seneca Railroad Company and the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, to recover damages to the plaintiff's estate in reversion in certain lands, caused by the obstruction of a natural water-course and the diversion of the water therefrom to and upon said lands. The declaration contains six counts. The first, second and sixth counts allege, in substance, that at the time of the commission of the grievances thereinafter mentioned, a certain farm in Grundy county, containing 240 acres of land, was in the possession and occupancy of Frank Horan, as the plaintiff's tenant, the reversion thereof then and there and still belonging to the plaintiff, and that through, over and across the north-east portion of said farm, from the south, in a northerly direction, an ancient stream, slough or water-course was wont to run and flow in its natural channel, without obstruction or interruption, whereby, from time immemorial, said premises had been and ought to be drained and kept in good tillable condition, and free from all injurious and damaging excess of water; yet the defendants, well knowing the premises, but contriving and intending to injure the plaintiff in his said reversionary estate and interest, on the 1st day of March, 1879, at said county, wrongfully and injuriously, with a certain line or track of railroad commonly called the Kankakee and Seneca Railroad, and the trenches, bridges and embankments thereof, by the defendants then and there built over, through and across said farm and said ancient stream or water-course, obstructed and impeded, and so narrowed and filled up the natural channel of said stream or water-course, that on the day aforesaid, and from thence hitherto, said channel has been and is permanently incapable of carrying off large and divers quantities of water that were, at the date aforesaid, and at divers other times between that day and the commencement

of this suit, and will be from time to time upon said farm in the future, as it was wont to do and otherwise would do. The sixth count alleges that, by means of said railroad, and the grades, embankments, bridges, culverts, cuts and trenches thereof, by the defendants then and there constructed, maintained and kept up, the defendants have wrongfully, unjustly and permanently diverted the water of said ancient stream, slough or water-course from its natural channel towards, to and upon the said farm of the plaintiff. Each of said counts alleges that, by means of the premises, the plaintiff has been injured in his said reversionary interest and estate.

The third and fourth counts allege that the plaintiff now is, and at and before the commission by the defendants of the grievances therein complained of, and ever since, has been the owner in fee of said farm, with the appurtenances, and that said farm was of great rental value, to-wit, an annual rental value of $5000; and after averring the existence and description of said water-course as in the other counts, allege that the defendants, well knowing, etc., at the date aforesaid, permanently diverted the water of said stream, slough or water-course from its natural channel, to and upon said premises, and thereby then and there permanently injured the plaintiff in his said estate.

The fifth count alleges that, at the time of the commission of the grievances complained of, the plaintiff was, and ever since has been, the owner of said farm with the appurtenances, and that said premises then were and ever since have been in the possession and occupation of said Frank Horan, the reversion thereof then and there belonging to the plaintiff, and that the defendants, with said line or track of railroad, and the trenches, bridges and embankments thereof, by the defendants then and there built and constructed over and through said premises and the said ancient stream, slough or water-course, by means whereof the water therefrom now does, and from time to time in the future will, permanently leave its channel

and course, and run to, towards and upon and overflow said premises, whereby the plaintiff has been and is greatly and permanently injured in his said reversionary interest and estate in and to said premises.

The defendants severally pleaded not guilty, and at the trial the jury found both the defendants guilty, and assessed the plaintiff's damages at $7200. For this sum and costs, the Circuit Court, after denying the motions severally entered by the defendants for a new trial, and in arrest of judgment, gave judgment in favor of the plaintiff. The defendants having appealed to the Appellate Court, the plaintiff there voluntarily remitted from his judgment the sum of $3200, and said court thereupon affirmed said judgment for $4000 and costs, and by a further appeal the defendants have now brought the record to this court for review.

The facts developed at the trial, so far as it is material to notice them here, are briefly as follows: The plaintiff is, and for many years has been, the owner in fee of a farm consisting of the south-west quarter and the west half of the south-east quarter of section 32, in the town of Braceville, Grundy county. Said farm, during the entire period of time covered by the present controversy, was in the actual possession of Frank Horan, the plaintiff's son, under an arrangement by which he was permitted by the plaintiff to occupy, use and cultivate the farm for his own benefit without rent, the term of the tenancy being left wholly indefinite, thus constituting it a mere tenancy at will.

Prior to 1881, the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company was owning and operating a line of railway running from Cincinnati, Ohio, to Kankakee, in this State, the westerly terminus of said line being at Kankakee, and said company then being in the habit of running its trains from Kankakee to Chicago over the Illinois Central Railroad, by virtue of some arrangement with the company owning that road. The Kankakee and Seneca Railroad Com-

pany was thereupon organized on the 22d day of February, 1881, for the purpose of building a railroad connecting with the road of the Cincinnati company at its terminus at Kankakee, and running from that point to Seneca, a station on the Chicago, Rock Island and Pacific Railway, and there connecting with that line of railway. Said proposed line of railway was built and completed during the years 1881 and 1882, nominally at least by said Kankakee and Seneca Railroad Company, and immediately after its completion, it was taken possession of and has ever since been in the possession of and been operated, used and controlled by the Cincinnati company. There was considerable evidence, most of it circumstantial however, tending to show that the Kankakee and Seneca Company was organized and said road built at the instance and in the interest of the Cincinnati company, and was but a mere instrument created and used by the last named company for the construction of a railroad extending its then existing line so as to connect with the line of the Rock Island company at Seneca. The right of way for said railroad across the plaintiff's farm was conveyed by the plaintiff to said Kankakee and Seneca Railroad Company by deed.

Said railroad crosses said farm in a south-easterly and north-westerly direction, crossing the north line of the farm about forty rods east of the north-west corner and crossing the east line about thirty rods north of the south-east corner, thus dividing the farm into two unequal portions, the southerly part containing about 170 acres and the northerly part about 70 acres. The stream or water-course in question, known as the Parker slough, rises at a point several miles south of said farm, and running north-easterly, crosses the line of the railroad at a point about eighty rods east of the south-east corner of the farm; and then taking a north-westerly direction, crosses the east line of the farm about twenty-five rods south of the north-east corner, and thence making a slight curve, returns and emerges from the farm near said corner.

The surface of said farm and of the surrounding region is low and nearly level, and the railroad, from the point where it enters the farm near the north-west corner, to the place where it crosses the slough, constitutes an embankment from two and one-half to three feet in hight. The railroad crosses the slough by a bridge built upon piles driven into the ground. Another smaller slough situated some distance east rises south of the farm, and runs northerly across the south-east corner of the farm and crosses the line of the railroad at a point near where the railroad crosses the east line of the farm, and there is constructed another bridge similar to the one over the other slough. In constructing the railroad embankment, a ditch was excavated along the southerly side of the embankment, about one and one-half feet in depth, and from fifteen to twenty feet in width. This ditch was carried easterly nearly to the Parker slough, a few feet only of earth being left between the end of the ditch and the slough. There was evidence tending to show that the openings through the railroad embankment under the bridge were not sufficient to carry off and discharge the water in the Parker slough in times of high water, and that large quantities of water were consequently dammed up so as to set back upon and flood the portion of the farm south of the railroad; also that the water cut a channel through the earth left between the Parker slough and the railroad ditch, and that large quantities of water were thereby let into said ditch and carried easterly so as to flood the farm.

All of the controverted questions of fact in the case being conclusively settled by the judgment of the Appellate Court, we must regard the allegations of the declaration as to the improper and insufficient construction of the railroad embankment, trenches and bridges, and their incapability of carrying off the water naturally flowing into and through said slough or water-course, as established and not open to investigation here. We must also regard it as settled that in consequence of the improper construction of said railroad and its appur-

tenances, the waters in said slough have been and will be dammed up, set back and diverted to and upon the plaintiff's farm, in manner and form as is alleged in the declaration, and that the plaintiff has thereby suffered damages to his estate in reversion to the amount of the judgment. It must also be regarded as settled that the Cincinnati company was a joint actor with the Kankakee company in the construction and maintenance of said railroad, or so contributed to its construction and maintenance as to be liable to the plaintiff, jointly with that company, for the damages resulting therefrom. The rule of law is, that all who contribute to a tort, even by their wills alone, and especially therefore, all who contribute by their acts, even though in an inferior degree, are, whether they are personally present or absent at the doing, liable to the person injured, each for the entire damages. Bishop's Non-Contract Law, sec. 522. The evidence clearly tended to show such complicity on the part of the Cincinnati company, and the finding of the jury, confirmed by the judgment of the Circuit and Appellate Courts, conclusively establishes its contribution, both to the creation and maintenance of said nuisance, in such manner as to render it liable.

The first error of law complained of is, the overruling by the Circuit Court of the defendants' motion in arrest of judgment, such motion being based upon the allegation that the declaration states no cause of action for damages to the plaintiff's reversionary interest. In four counts of the declaration, the plaintiff claims an estate in reversion in the farm in question, after the expiration of the tenancy of his son Frank Horan who was then occupying the farm as his tenant. Said counts then allege the construction and maintenance by the defendants of a railroad and its appurtenances, consisting of a permanent embankment, ditches, bridges, etc., by means of which the waters of said slough or water-course are and will be permanently dammed up, diverted to and caused to set back upon and overflow said farm, thus creating a continuing and per-

·manent nuisance to and upon said farm. It is then alleged that, by reason of said nuisance, the plaintiff has suffered injury and damage to his estate in reversion. We are unable to understand how the declaration can be held to be defective in the particular here pointed out. If we rightly comprehend the contention of the defendants' counsel it is, that the damages alleged are solely to the possession, and as it is not alleged that the tenancy has terminated, or how long it will continue, it does not appear that the plaintiff has been or ever will be damaged, so far as his estate in reversion is concerned. This position is manifestly untenable. An injury to land which is permanent in its nature, is necessarily an injury to the entire estate, and that includes the estate in expectancy as well as the estate in possession. An allegation of a permanent injury to land necessarily imports damage in some amount to the reversion. Undoubtedly, the estate in possession, its nature and duration, and the amount of rent reserved, if any, are material matters to be considered in the assessment of damages in favor of the owner of the reversion, but they are quite immaterial where the question is merely as to the sufficiency of the declaration to show a cause of action, or to warrant the recovery of any damages.

It can not be doubted that the road-bed, embankments, trenches, bridges, culverts and other appurtenances of a railroad constructed and maintained in pursuance of lawful authority, are to be regarded in law as permanent structures. This is not so because it is certain that they will in fact continue to subsist in their present condition forever, or that they ·are not liable to be changed in many respects by the proprietors of the railroad whenever they may see fit, or by natural ·causes, but it is so because the railroad company has a legal right to maintain them perpetually, and because no other party has or can have a lawful right to interfere with or change them in any respect. It is for this reason that when a railroad company lawfully appropriates land for the construction

of its road, such appropriation is a permanent one, and in case other property is damaged by its construction or maintenance, such damage is in its nature equally permanent. It is therefore held that, where deterioration of the value of land is occasioned by a nuisance created by the construction of a railroad, such nuisance is a permanent one, so that all damages for past and future injury to the property may be recovered in one suit, and such recovery is a bar to all future actions therefor. *C. & E. I. R. R. Co.* v. *Loeb,* 118 Ill. 203.

The next point made is, that the court submitted to the jury an incorrect rule of damages. The measure of damages, as laid down by the plaintiff's fourth instruction, was, "the depreciation in the market value of said farm by reason of said alleged overflow." It is said that this did not limit the plaintiff's recovery to such damages as had accrued to his reversionary interest. Whether this is so or not must depend upon the nature and extent of that interest. If the tenancy of Frank Horan was of such a nature that the plaintiff was at liberty at any instant to terminate it and thus convert his reversion into an estate in possession, the rule of damages adopted by the instruction would not seem to be improper. That such was the character of said tenancy is conclusively shown by the evidence. The only witness testifying on the subject was the tenant himself, and he swears that he went into and held possession under a verbal permission by his father to take possession of and cultivate the farm for his own benefit and make what he could out of it, no time being fixed for the duration of such possession, and no rent being reserved, agreed upon or in fact paid. This was clearly a tenancy at will, which was subject to be terminated at any instant at the will of the lessor, such right to terminate it being subject only to the tenant's right to the emblements, in case there were growing crops at the time. Such tenancy is manifestly not such an estate as should necessitate an apportionment be-

tween it and the reversion of the damages arising from a depreciation of the market value of the land.

Complaint is made of various rulings of the court in the admission and exclusion of evidence. Several witnesses were asked and permitted to give their opinion as to the market value of the plaintiff's farm before and after the railroad was built, and to state that the depreciation in value shown by their testimony was caused by the overflow of water resulting from the construction of the railroad. This evidence was properly admitted. The depreciation in the market value of land, arising from a permanent injury thereto, is the proper measure of damages to the owner. *Dupuis* v. *C. & N. W. Ry. Co.* 115 Ill. 99; *C. & P. R. R. Co.* v. *Stein,* 75 id. 41; *I. C. R. R. Co.* v. *Grabill,* 50 id. 241; *C. & I. R. R. Co.* v. *Baker,* 73 id. 316; *C., M. & St. P. R. R. Co.* v. *Hall,* 90 id. 42; *C. & E. I. R. R. Co.* v. *Loeb, supra.*

Complaint is also made of the admission in evidence of certain maps or plats of the premises in question. Said papers were identified by the witnesses, and shown to be substantially correct, and we think there was no error in submitting them to the jury, to be considered, in connection with the other evidence in the case.

It is claimed that the court erred in permitting the plaintiff's counsel to read in evidence a portion of the defendants' petition for a change of venue. It appears that at some time previous to the trial a petition on behalf of the defendants for a change of venue, verified by the affidavit of Joseph W. Sherwood, who at the time was the superintendent of both defendants, was filed. The passage from said petition read to the jury was as follows: "Said railroad was constructed in the year 1881, and operated most of the time since by said Cincinnati, Indianapolis, St. Louis and Chicago Railway Company." Without pausing to determine whether the statements of said petition are competent evidence against the defendants—of which however we do not think there can be much

doubt—the defendants can not have been materially prejudiced by the admission of the passage read in evidence, as there seems to be an abundance of evidence *aliunde* of both the facts therein stated, and neither seems to have been the subject of any considerable controversy. It is conceded on all hands that the railroad in question was constructed in 1881 or in that year and the early part of the year following, and it does not seem to be disputed that the Cincinnati company is now operating said road, and has been doing so ever since it was completed.

Again, it is urged that the court erred in admitting in evidence the bill of complaint in a certain suit brought in the Circuit Court of the United States for the Northern District of Illinois, by the Cincinnati, Indianapolis, St. Louis and Chicago Railway Company, against the plaintiff in this suit, and said Frank Horan, to enjoin the plaintiff from prosecuting this suit, and to enjoin said Frank Horan from prosecuting another suit against said complainant and said Kankakee company to recover damages for injuries to his crops growing on said farm by reason of being flooded with water. Said bill of complaint related to the same subject matter in litigation here, and contained various averments as to matters of fact involved in the present suit. It was therefore competent evidence of admissions by the plaintiff therein, and there was no error in allowing it to be read to the jury.

It appeared that said bill was demurred to in the court where it was filed by the defendants thereto, and it is insisted that said demurrer should have the effect here of an admission that the allegations of the bill are true. This can not be conceded. The demurrer, it is true, was an admission of the truth of such matters in the bill as were well pleaded, but it was such admission only for the purpose of obtaining the judgment of the court as to the sufficiency of the bill on its face to entitle the complainant to relief, or rather it was a pleading by which the defendant demanded the judgment of the

court whether he should be compelled to answer the bill or not. Story's Eq. Plead. sec. 436. For no other purpose can it be held to be an admission of the allegations of the bill, unless it appears, as it does not here, that the demurrer being held insufficient, the defendant elected to abide by his demurrer, and permitted a decree to go against him upon the facts thus admitted.

Error is also assigned upon the refusal of the court to permit the defendants to read to the jury from the bill of exceptions taken at a former trial the testimony of one Moran, who was a witness at that trial, but who has since died. To this point there are two answers, either of which is sufficient. 1. The testimony of a deceased witness given on a former trial can not be shown by the bill of exceptions taken at that trial, and it is therefore not error to refuse to permit his testimony to be proved in that mode. *Roth* v. *Smith,* 54 Ill. 431 ; *Stern* v. *The People,* 102 id. 540. 2. The testimony of the deceased witness is not preserved in the present record, and there is therefore nothing from which we can determine whether said testimony was material or not. *Smith* v. *Heirs of Jackson,* 76 Ill. 254.

Complaint is also made of the refusal by the court to admit in evidence two mortgages executed by said Kankakee company to M. E. Ingalls and R. R. Cable, as trustees, conveying its railroad and appurtenances. The first mortgage was dated July 1, 1881, and purported to secure six hundred bonds of the mortgagor of $1000 each. The second mortgage was dated July 1, 1882, and recited that the holders of the bonds secured by the first mortgage had advanced to the mortgagor an additional $50,000, and had agreed to accept a new series of six hundred and fifty bonds of the same denomination ; and said second mortgage therefore purports to be given to secure said second series of six hundred and fifty bonds, one half of them payable to said Cincinnati company and the other one half to said Rock Island company.

20—131 ILL.

We are unable to see any legitimate purpose for which said mortgages could be material as evidence. They were probably offered to show that the Kankakee company was the principal actor in the construction of said railroad, but it is manifest that the execution of said mortgages were not acts forming any part of the *res gestæ* of the construction of the road, and that both the execution of the mortgages, and the recitals therein contained are purely *res inter alios acta*, and therefore not competent evidence as against the plaintiff in this suit.

The only theory suggested in support of their materiality is, that they might tend to repel the inference, arising from the fact that the Kankakee company was organized with a capital stock of only $10,000, that it had no means, and therefore could not have constructed said railroad. The material question, so far as that aspect of the case is concerned, is, whether that company did in fact build the road, and showing that it had control of the requisite funds, would not tend to establish that fact, in the absence of evidence tending to show the specific appropriation of such money to the purpose of building it.

But the plaintiff's right to recover against the Cincinnati company does not rest upon the theory that the Kankakee company was not the organic instrument by which the road was constructed. It may be admitted that the road was built by that company with moneys obtained by mortgaging the road, and that the legal title to the road and its appurtenances is and always has been in that company, and still those facts do not repel the inferences legitimately arising from the evidence that the Cincinnati company counseled, contributed to and assisted in the enterprise in such manner as to be jointly liable with the Kankakee company for the consequences of the wrongful, negligent or improper construction of the road. Even the mortgages in question, if they had been received in evidence, would, in connection with the other circumstances in proof, have furnished very suggestive corroboration of the the-

ory that the Kankakee company was organized and designed as a mere instrument in the hands of the Cincinnati company for the construction of a line of railroad for the use and to subserve the purposes of that company, said company being in fact the real and ultimate principal in the enterprise. It can not be doubted that if said company had employed a natural person to do, for its use and advantage, just what the Kankakee company has done, it would be liable jointly with him for his torts, or perhaps the case might call for an application of the maxim *respondeat superior*. There is no magic in a corporate organization, where the corporation is in fact employed for the accomplishment of the same result, which can exempt the employer from the same responsibility.

A number of errors are assigned upon the rulings of the court in giving and refusing instructions to the jury. Four instructions were given at the instance of the plaintiff, upon each of which the defendants' counsel has bestowed some degree of criticism, but we find nothing in the points raised which makes it necessary for us to do more than to say, that so far as we are able to see, said instructions state the law applicable to the case with substantial accuracy.

A large number of instructions were asked on behalf of the defendants, some of which were given as asked, others were given after being slightly modified by the court, and others were refused. We find no material error in any of the modifications of the instructions given, and of those refused, only one, the thirteenth, seems to us to merit particular discussion. That instruction is as follows:

"13. If the jury find, from the evidence, that the outlet for the water of the Parker slough, constructed on or near the east line of Bertrand D. Parker's land, afforded as good facilities for the discharge of the water running through said slough as were afforded by said slough before said railroad was constructed and the course of said water-course interfered with, then neither of said defendants is liable in this action for any

damages resulting to the plaintiff by waters flowing from said
Parker's slough over the premises occupied by him, by reason
of the trestle and opening at said locality. And if the jury
find, from the evidence, that, in consequence of the artificial
ditches, cuts and other excavations made by neighboring land
owners since the construction of the railroad, the amount of
water discharged into the Parker slough, and which flowed
therefrom on to the premises of the plaintiff, was increased,
and exceeded in amount the waters which flowed through said
slough before the railroad was constructed and said water-
course interfered with, neither of the defendants in this case
is liable for any damages done by said excessive flowing of
water over said slough over the premises occupied by the plain-
tiff, provided nothing was done in the construction of the rail-
road, or in connection therewith, to diminish the flow of water
through the Parker slough, or to diminish the capacity of the
Parker slough to convey water, or to increase the flow of water
from the Parker slough on to the plaintiff's land."

The first proposition contained in the instruction is repeated,
in substance in the defendants' second instruction which was
given, and so, whether erroneous or not, it requires no further
comment as its refusal here furnishes the defendants with no
ground of complaint. As to the residue of the instruction,
we are inclined to concur with the view taken by the Appellate
Court. That court, in holding the instruction erroneous, said :

"It in substance tells the jury that the appellants, when
fixing the culvert for the passage of the water of the Parker
slough, a natural water-course, was only bound to so construct
it that it was no obstruction to the water then flowing into it,
but as to any increase of water caused by the drainage into it
by people along the course of the slough, the appellants would
not be liable, though the culvert was not sufficient to admit
of the passage of such water. We do not subscribe to this
doctrine. The Parker slough was a water-course, and it was
the legal right of any one along its line for miles above the

railroad, where the water naturally shed toward the slough, to drain into it, and no one below, owning land along the slough, would have any legal remedy against such person so draining water into the slough above him, for any damage done to his inheritance by means of an increased flow of water caused thereby. In other words, the slough was a legal water-course for the drainage of all the land the natural tendency of which was to cast its surplus water caused by the falling of rain and snow, into it; and this, whether the flow was increased by artificial means or not. It would seem legitimately to follow, that the railroad company, in providing a passage way for the slough, was bound to anticipate and provide for any such legal increase of the water flow. If it did not, it was doing a wrong and legal injury to any one situated like the appellee, who received injury in consequence of a failure on its part to do its duty."

After considering the entire record, we find no material error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*