| 108 | 659 |
| e112 | ³425 |

### Illinois Central R. R. Co. v. H. E. Ferrell.

1. ACTIONS—*Where Damages Are Caused by Concurring Agencies.*— Where damages recoverable in law are caused by, concurring agencies, put in operation by different parties, it is no defense in a suit against one of these parties, that others have also contributed in causing the damage.

2. STATUTES—*Charter of the Illinois Central Railroad Construed.*— The charter of the Illinois Central Railroad Company (Laws 1851, p. 61) whereby such company is authorized to take possession of and use, all and singular, any lands, streams and materials of every kind, for the purpose of constructing bridges, dams, etc., does not absolve it from

liability for damages to those whose lands are overflowed in consequence of such acts.

3. NUISANCES—*Construction of a Railway Done with Reasonable Care and Skillfully, Not a Nuisance.*—The construction of a railway, skillfully, with reasonable care and for proper railway purposes, although it injures adjacent property, is not a nuisance that can be abated.

4. DAMAGES—*Caused by Construction of a Railway—Permanent Injury.*—An injury caused to property by the construction of a railway, when constructed in a skillful manner for proper railroad uses, is to be treated as a permanent injury for which but one recovery can be had by the owner of the land; the measure of damages is the decreased value of the property, and a right of action for such damage does not pass to a subsequent grantee of the owner. The statute of limitations begins to run from the date of the existence of the causes which produced the injury.

5. SAME—*Tenant Leasing Land Subject to Overflow from Permanent Causes Has No Cause of Action.*—A tenant leasing land, which is subject to recurring injury from overflows, and damage to crops occasioned by lawful and permanent causes existing when he leased the land, is a volunteer, taking it subject to such damages and with no right of action to recover for the same.

6. INSTRUCTIONS—*Judge Not Required to Give Counsel Notice if He Sees Fit to Submit Additional Instructions.*—The presumption is that attorneys are always in attendance in court until their cases are disposed of, and if not present the judge is not required to give them notice if he sees fit to submit additional instructions to the jury, although such practice is not to be commended.

7. SAME—*Exceptions to be Taken When They Are Given.*—Exceptions are to be taken to instructions when they are given.

**Trespass on the Case,** for damage to crops from overflow. Appeal from the Circuit Court of Jackson County; the Hon. JOSEPH P. ROBARTS, Judge presiding. Heard in this court at the August term, 1902. Reversed and remanded. Opinion filed March 2, 1903.

This is an action of trespass on the case to the January term, A. D. 1901, of the Jackson County Circuit Court, by appellee, to recover damage to growing crops, etc., resulting from overflow alleged to have been caused by appellant in obstructing the natural flow of water through Drury creek.

The original declaration consisted of a single count. It averred that in 1896 and 1897, the plaintiff was in possession of and was cultivating certain described lands, thirty

acres of which were adapted to growing asparagus, potatoes, corn grass, etc.; that the natural flow of surface water is into Drury creek, which passes through a portion of the lands for a mile in a northerly direction, where it crosses the defendant's right of way from the east to the west side thereof, thence in a northerly direction near the railroad, about a mile; that on April 1, 1895, defendant wrongfully and unlawfully built a dam about five feet high and two feet thick, across said creek on said right of way, west of the railroad track, and also built abutments and pillars in said creek where it crosses said right of way, and also placed girders to said pillars which are about one mile below and in a northerly direction from said described land and has from thence, hitherto, maintained them as aforesaid, which dam, abutments, pillars and girders obstruct the natural flow of the water in the said creek; by reason thereof, large quantities of surface water, occasioned by rain and melted snow that have naturally flowed over above described lands and other lands south of said dam, etc., into said creek, were obstructed in such natural flow during the years 1896 and 1897 by said dam, etc., causing the water in said creek to back over and remain upon said land; and the said crops of asparagus, etc., growing thereon in the year 1896, were damaged to the amount of $200, and destroyed to the amount of $300, and in the year 1897 to like amount; that by reason of the premises plaintiff lost and was deprived of the rents and profits from the sale of the lands, asparagus, fruit trees and other crops on said premises for the years 1896 and 1897 worth $1,000, and also during said time put to great annoyances and inconveniences in going to and from the buildings situated on said premises, and over said premises, to his damage of $1,000.

An additional count, after stating the proper inducements, was subsequently added in substance as follows: It charges that defendant on January 1, 1860, filled up the natural bed of the creek solid with dirt, at a point about one mile north of the above described land, and changed the

natural bed of Drury creek through a narrow cut made by
defendant for that purpose; that, to wit, on January 1,
1894, defendant built a dam of stone, in and across said cut,
about two feet thick and five feet high, and, to wit, on
April 1, 1896, built certain bridges over and across said creek,
with abutments, pillars and girders, which said cut, dam
and bridge, defendant has maintained hitherto, which cut,
dam, etc., obstructed the natural flow of water in said creek,
in the years 1896, 1897 and 1898, and thereby caused to
stand upon and flow back upon said land, while in the law-
ful possession of plaintiff, and thereby damaged a portion
and destroyed a portion of the asparagus and other crops
growing thereon, for the years 1896, 1897 and 1898, to a
just amount, to wit, $500 for the year 1896, $500 for the
year 1897, and $500 for the year 1898. Further, that by
reason of the premises large quantities of sediment were
deposited on the land in said years, and upon the asparagus,
etc., and the sediment so deposited, greatly damaged a
portion of the asparagus, etc., growing thereon, for the
years 1896, 1897 and 1898, to wit, $500 for the year 1896,
$500 for the year 1897, and $500 for the year 1898; that
plaintiff, by reason of the premises, was prevented from
cultivating a large portion of the land for the years men-
tioned, was deprived of the use of rents of said lands,
amounting to $500 for each of said years, and was put to
great inconvenience in getting from and over said premises
during said years to the damage of $300 each year, and to
the total damage to the plaintiff of $1,000, and therefore he
sues.

Defendant pleaded not guilty.

Trial by jury and verdict for plaintiff for $450, upon
which judgment was rendered and defendant appealed.

At the close of plaintiff's evidence, and also at the close
of all the evidence, defendant asked the court to instruct
the jury to find defendant not guilty, which instructions the
court refused and defendant excepted.

Drury creek flows in a northerly direction for about a
mile, to where, at the point involved, it crosses appellant's

railroad from east to west. From there it flows northerly on the west side of the railroad for another mile, where it crosses to the east side again, flowing to the north, and empties into Crab Orchard creek. A valley or watershed of about 13,000 acres is drained by the creek. In dry seasons, but little water flows through it. In times of continued rain and freshets, it always overflowed the low lands in this case, and still overflows them. Before the construction of the alleged dam, pillars, etc., it is claimed that the overflow soon ran off, doing but little damage, but since the building of these obstructions, the overflow is held back upon the land, destroying the crops and leaving a sediment which remains on the land, and is gradually raising the bed of the creek, thereby increasing the overflow.

Appellant constructed its original bridge at a bend of Drury creek, below and north of which, in the construction of its roadbed, appellant filled up the channel of the creek and cut a new channel on the west side, and parallel to, and on its right of way, into which it diverted the water of the creek. It is in this channel where the dam was placed. This dam was originally built in 1890 or 1892, both dates being stated, for the purpose of holding water for appellant's tank at Mikanda station, close by. In 1893, appellant raised the height of the dam two and a half feet or more. In 1895 and 1896, appellant built a new track west of its old track, and constructed its bridge. The pillars, abutments, girders, etc., of this bridge, are alleged to contribute with the dam, to the overflow of the land described in the declaration. At the time of cutting this new channel, which was prior to 1880, the land was wild and uncultivated. It was not owned by Fitch, the present owner, until December, 1892. In that year, appellee, by some agreement with Fitch, the details of which do not clearly appear, went into possession of the land as Fitch's tenant. He set out asparagus roots furnished by Fitch, and agreed to give him one-quarter of the product. It is for the injury to the asparagus and other crops in 1896 and 1897, together with loss of use of the land, and annoyances in its use, caused by the overflow, that this suit is brought.

W. W. BARR, attorney for appellant; J. M. DICKINSON, of counsel.

WILLIAM A. SCHWARTZ, attorney for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The evidence in this case is voluminous. It fairly tends to prove that the dam, abutments, etc., constructed by appellant, contributed, with other causes for which appellant was not responsible, to overflow the lands described in the declaration, and to hold back such overflow, for a longer time than it would otherwise have remained there.

If there is a right of action by appellee against appellant for such overflow, the fact that other causes concurred with the obstructions built by appellant, in producing the overflow, constitutes no defense. Where damages recoverable in law are caused by concurring agencies, put in operation by different parties, it is no defense in a suit against one of these parties, that others have also contributed in causing the damage. Kankakee & Seneca R. R. Co. v. Horan, 131 Ill. 288.

This being the law, it is not important to review the evidence as to the extent, if any, of damages occasioned by other agencies, operating with the acts of appellant.

If this case rested, then, upon the issue as to whether the acts of appellant contributed to the damage sustained by appellee, the evidence was sufficient to warrant the jury in finding that they did so contribute. Appellant insists that under the powers granted to the Illinois Central Railroad Company, it is not liable, although its dam, etc., may have caused the overflow, provided they were constructed with reasonable care and skill.

The provisions of appellant's charter, which give it the powers claimed, are in section 2 of an act entitled " An Act to Incorporate the Illinois Central Railroad Company," found in the laws of 1851, page 61, Adams & Durham's Revised Statutes, and are in substance as follows: " To survey, locate, construct, complete, alter, maintain and

operate a railroad, with one or more tracks or lines or rails to a point at the city of Cairo, etc.;" and by section 3, it is provided "the said corporation shall have a right of way upon and may appropriate to its sole use and control, for the purposes contemplated herein, land not exceeding 200 feet in width through its entire length; may enter upon and take possession of and use, all and singular, any lands, streams and materials, of every kind, for the location of depots, and stopping stages, for the purpose of constructing bridges, dams, embankments, excavations, station grounds, turnouts, engine houses, spoil grounds, shops, and other buildings necessary for the construction, operating, altering, maintaining, preserving and complete operation of the road." Whenever those things, so to be taken, were yet the property of the state, they were by the act, given and granted to appellant; but when they had already been acquired and then belonged to private persons, power was given to acquire them under the law of eminent domain.

Keeping in view the authority granted by this charter, which by section 27 is declared to be a public act, it is clear that appellant did not act unlawfully when it cut a channel for Drury creek on its own right of way, diverted the water flowing over that right of way into this new channel, and built a dam across said channel to hold water for supplying its tank at Mikanda station. It was "authorized to take possession of and use, all and singular, any lands, streams and materials of every kind, * * * for the purpose of constructing bridges, dams, etc." But it does not follow, that because such acts were not unlawful, being authorized by its charter, that appellant was therefore not liable for damages to those whose lands were overflowed in consequence of such acts. In North Shore St. Ry. Co. v. Payne, 192 Ill. 243, it is said:

"If, however, the erection and maintenance of the power-house were things which the defendant's charter authorized it to do in the operation of its road, and they were performed in a reasonably skillful and proper manner, although of such a character as to injure and annoy plaintiff as an adjacent property owner, they would not constitute a nui-

sance and could not be abated as such; nevertheless, the defendant would be liable for the damages to the same extent and under the same rules as though the power-house was a nuisance."

In this case it is also said :

" Under the constitution of 1848, if there was no actual physical interference with property, and the work was done without negligence, the charter of a railroad company was protection against merely consequent injuries.  *  *  *

The present constitution requires a compensation in all cases where, but for legislative authority to do the act, an action would lie at the common law.   The charter of the defendant does not, under the present constitution, take away from plaintiff the right to recover for the noise, etc."

While the charter of the Illinois Central Railroad Company has given it a right of way, the use of streams and materials, and ample powers for the construction of its road, it did not provide that it should not be liable for injuries to the property of others by reason of the use of its liberal powers.   In this respect it stands upon the same footing as other corporations lawfully constructing and operating railroads, which have repeatedly been held liable for injuries to adjacent lands.   C., B. & Q. R. R. v. Shaffer, 124 Ill. 112; Ohio & Miss. R. R. Co. v. Thillman, 143 Ill. 127; Burke v. Sanitary Dist., 152 Ill. 126; Miller v. Chi. & E. I. R. R. Co., 60 Ill. App. 51.

Appellant insists that appellee has no right of action to recover damages, although by obstructing Drury creek, appellant may have caused it to overflow the land described in the declaration; that under the evidence, if appellant is liable at all, it is for permanent injury, and that for such injury there can be but one recovery, and that by the owner of the land.

This defense is based upon the proposition that the alleged obstructions were lawfully built with reasonable care, and for legitimate railroad uses, and are permanent in their character.   It is evident from an examination of appellant's charter, as stated before, that the cutting of the channel for Drury creek on its own right of way, the building of a dam

across this channel to secure water for its own use, and the bridging of this creek, were within its granted powers, and are, therefore, not unlawful.

It is not alleged, nor is it proved, that these acts were not done with reasonable care and were not for proper railroad uses.

The law is well settled in this state, that a railroad company, authorized by its charter, to construct and maintain its road, when it does so skillfully and with reasonable care, and for proper railroad uses, although it may in so doing, injure adjacent property, is not a nuisance that can be abated. It is well settled also, that an injury to property thereby caused, is to be treated as a permanent injury for which but one recovery can be had by the owner of the land, and that the measure of damages is the decreased value of the property, and that a right of action for such damages does not pass to a subsequent grantee of the owner, and that the statute of limitations begins to run from the date of the existence of the causes which produced the injury. C. & A. R. R. Co. v. Maher, 91 Ill. 312; Schlitz Brewing Co. v. Compton, 142 Ill. 511; Galt v. C. & N. W. R. R. Co., 157 Ill. 137; Kankakee & Seneca R. R. Co. v. Horan, 131 Ill. 288; Chi. North Shore Ry. Co. v. Payne, 192 Ill. 239.

The case of Ohio & Miss. Ry. Co. v. Wachter, 123 Ill. 440, cited by appellee, is not inconsistent with the decisions above cited. It was certified to the Supreme Court, the proposition involved being " the injury caused by the construction of an insufficient culvert in a railroad embankment is immediate and permanent, giving rise to but one cause of action."

In discussing this proposition, the court say:

" The statement is not accurate as an abstract proposition. * * * Considered as a general proposition, it should at least be limited to the case of a railroad built under authority of law and in a reasonably proper and skillful manner * * * so as to avoid the infliction of all loss and injury not necessarily resulting from the building and operation of the road. * * * The decisions of the Supreme Court

above cited, as we understand them, go to the length of holding that all special damages, present and prospective, to the owner of land, resulting or to result from properly constructing, maintaining and operating a railroad under the laws of this state, constitute as to such land owner, one single, indivisible cause of action."

Nor is the case of C., B. & Q. R. R. Co. v. Shaffer, *supra*, inconsistent with the cases cited. In this case it appeared that the bridge causing the overflow, was improperly built. For this reason it could not be assumed that it was a lawful, permanent structure. In the opinion it is said :

" If the bridge had been properly built, whatever injury it caused to appellee's land, would have been the necessary result of a necessary public improvement, and would have been permanent in its character."

These decisions, and others that might be cited, while holding that but one recovery can be maintained by the owner of land injured by lawful and permanent causes, do not hold that a tenant for a term of years whose leasehold estate is lessened in value by reason of such permanent causes, put in operation during his term, may not recover for damage to such estate. We see no valid reason why he should not recover.

But applying the principle that the owner can recover in but one action, and that for depreciation in the value of the realty, the tenant could recover in but one action, and that for the damage to his leasehold estate.

It is also well settled, that a tenant leasing land which is subject to recurring injury from overflows, and damage to crops occasioned by lawful and permanent causes existing when he leased the land, is a volunteer, taking it subject to such damages and with no right of action to recover for the same.

If a right of action does not pass from the owner to a subsequent purchaser, it follows by analogy, that a right of action in the landlord does not pass to his tenant. That a tenant, taking his lease when lawful and permanent causes of damages exist, does not have a right of action for damages occasioned by such causes, is held in C. & A. R. R. Co.

v. Smith, 17 Ill. App. 58, and T. W. & W. R. R. Co. v. Hunter, 50 Ill. 328.

The case of Kankakee & Seneca R. R. Co. v. Horan, *supra*, cited by appellee, is not in point. It was a case to recover by a tenant, but the statement of facts does not show the character of his tenancy, nor was the question of his right to recover as a tenant raised in the case.

In Ohio & Miss. Ry. Co. v. Elliott, 34 Ill. App. 592, the right of a grantee to recover, is based upon the fact that the obstructions were negligently or improperly constructed.

The same is true in the case of C. & A. R. R. Co. v. Willi, 53 Ill. App. 603, and in St. L., A. & T. H. R. R. Co. v. Brown, 34 Ill. App. 553.

Assuming that these conclusions are correct, it is essential to the decision of this case to ascertain under what terms appellee held the land alleged to have been damaged. The only allegation of the declaration is, that he was in possession from 1892 to 1898. The damage is alleged to have been suffered in 1896 and 1897.

The evidence as to the character of appellee's possession is meager and unsatisfactory.

The evidence of Fitch, the owner of the land, is that " we set out between six and seven acres in asparagus in 1893. * * * I have owned the land since 1892. The Ferrell drift was in there in 1896. Ferrell had charge of the land before 1896. He removed the drift just before he moved away from the farm. His time was out the 1st of January (1898), and he removed it the latter part of August or the first of September, before he went away. Ferrell had a three-quarter interest in that asparagus crop. He set out the plants, six or seven acres, in 1893. I furnished them."

Farrell, appellee, testified :

" I put asparagus in this land in 1892 or 1893, in the fall, seven acres. * * * In my judgment, the dam across Drury creek caused the overflow. * * * Before the dam was put in, the rain came just to fill the banks of the creek, and the water would run off and not overflow the land. Since the dam was put in, it would be all over that bottom. The same quantity that would only fill the creek

without the dam, would overflow the bottom with the dam in. * * * Before the dam was put there, the water would not run out. * * * The years I was in the place, it never did get so high by two feet as it did since the dam was put in. * * * I farmed it for six years. * * * It was in 1894 that I first knew that the dam was put in. * * * I planted the asparagus in 1893. That is the year the dam was raised, I think. * * * I was to give Mr. Fitch a one-quarter interest in the business."

"Q. Who had possession of the Fitch land in 1895, 1896 and 1897? A. I had possession.

Q. What were you doing there? A. I was farming and growing vegetables.

Q. When did you go on the Fitch land? A. I went there in 1887.

Q. How long did you live there? A. Ten years.

Q. You left there when? A. I left there in 1897.

Q. Who had exclusive use of the farm in 1896 and 1897? A. I had."

This is all the evidence touching the relation of Fitch, the owner, to Ferrell, the tenant. This evidence proves only, that Ferrell was living on the land when Fitch bought it in 1892, and continued there until January 1, 1898, cultivating asparagus and other crops, in which Fitch had a one-quarter interest, until January 1, 1898, when his time was out; whether this time was a year or a term of years, does not appear. If Ferrell held the land under a lease for a term of years, commencing before the dam was raised in 1893, which, according to his testimony, caused the overflow, and terminating January 1, 1898, it was in his power, both he and his landlord being witnesses, to have proved that fact. It was a material fact in his favor, and not being proved, the presumption is that he was a tenant only from year to year. The elevation of the dam, which appellee testifies caused the overflow, having been made in 1893, if appellee remained on the land as a tenant from year to year, during the years 1896 and 1897, in which years he claims to have been damaged, he was for these years a volunteer holding over, subject to such damages as he might suffer. In this view of the case, it not being alleged in the declaration, nor proved on trial, that appellee was a tenant

for years, in possession as such when the obstructions were built, he shows no cause of action, and the instruction to find for appellant should have been given.

It is urged by counsel for appellant that the action of the judge in giving an instruction to the jury upon his own motion, and in the absence of counsel, and without notice to counsel, is reversible error.

It appears from the bill of exceptions, that the trial judge, after the jury had been considering the case for twenty-four hours, upon his own motion, and in the absence of counsel, and without notice to counsel, called the jury into court and gave an instruction to the effect that it was a civil case and did not require that the jury should be satisfied beyond a reasonable doubt in order to return a verdict, but that a preponderance of the evidence was sufficient to warrant a verdict for the side having such a preponderance.

It is claimed that the tendency of an instruction of this character was to intimate to the jury that in the judgment of the court the plaintiff, who was required to make out his case by a preponderance of the evidence, had done so, and that they should so find by their verdict. Shortly after giving the instruction, the jury returned a verdict for plaintiff.

In the opinion of a majority of this court, the giving of such instruction, under the circumstances, was not reversible error. This is upon the presumption that attorneys are always in attendance in court until their cases are disposed of, and if not present, that the judge is not required to give them notice if he sees fit to submit other instructions to the jury.

The theory is sound, but in the judgment of the writer of this opinion, its application is not always practicable. In our large cities, where more than one court is sitting at the same time, it is often impracticable for attorneys to remain constantly in attendance after a case has been submitted to the jury, until a verdict is returned.

Exceptions are to be taken to instructions when they are given. This is for the benefit of the court as well as for

the party litigant, in order that the attention of the court may be called particularly to the objectionable instructions. If in the absence of counsel and without notice, the judge may at any time after the jurors have retired, call them into court, and give additional instructions, absent counsel have no opportunity to except, and the judge deprives himself of the opportunity to avoid error, if his instruction is bad, which he would have had if his attention had been called to the faulty instruction when given. The practice, although not constituting reversible error, as held by a majority of this court, is not to be commended.

For the reasons cited in this opinion, *supra*, the judgment of the Circuit Court is reversed and the case remanded.