### Jeremie Martin, Appellee, v. Martin Porter, Appellant.

### Gen. No 5,090.

1. DAMAGES—*what not competent in action for injury to land re-sulting from diversion of natural flow of water.* In such an action damages are not shown by the testimony of a party to the effect that he considered that he was injured in a certain sum each year; the facts should be shown from which the conclusions may be drawn by the jury.

2. DAMAGES—*to whom action accrues for diversion of natural flow of water.* If the injury results from a temporary structure the cause of action is in the tenant if there be a tenant in possession under a term lease. If, however, the injury is occasioned by a permanent structure then the damages are to be recovered in an action by the owner of the reversion.

Action in case. Appeal from the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion filed October 19, 1909.

H. K. & H. H. WHEELER, for appellant.

A. L. GRANGER and W. G. BROOKS, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is a suit in case brought by Jeremie Martin, appellee, against Martin Porter, appellant, to recover damages alleged to have been caused to land owned by Martin, by reason of Porter filling a ditch and thereby damming up water and overflowing the land of Martin.

The declaration contains three counts. The first alleges in substance that the plaintiff, on the first of March, 1901, was the owner of a certain forty acres of land in Kankakee county, that the land was leased to one Boudreau, the reversion on the termination of said lease to be in the plaintiff; that on April 1, 1901, the defendant, owning land lying east and adjoining that of plaintiff, wrongfully built a levee on the west side of defendant's land, next to that of the plaintiff, with-

out sufficient openings to permit the free passage of water; that by reason thereof the flow of large quantities of water, which naturally flowed upon and over the premises of defendant, was obstructed and diverted upon the land of plaintiff and injured it, and the land became swampy and the plaintiff was damaged in his reversionary estate. The second and third counts allege in substance, the ownership of the adjoining lands by the respective parties and the construction of a ditch over the lands of the parties to this suit and the lands of others by agreement in 1879, and that in April, 1901, the defendant wrongfully and unlawfully, without the consent of the parties, constructed a levee across the ditch, thereby obstructing the flow of water, etc., and thereby caused damage to the reversionary estate of the plaintiff; the third count in addition to alleging damages to the reversionary estate also alleges that plaintiff was injured and aggrieved in his rents and profits from the land. The defendant pleaded the general issue. The case was heard before the court without a jury. A judgment was rendered in favor of plaintiff for $165, and the defendant appeals to this court.

The record shows that Porter owns land lying east of and adjoining the land of Martin. Parties of the name of Dayton and Lines own land lying west of and adjoining the land of Martin. Martin bought his land from the heirs of one Miner in February, 1901. In 1879 the owners of these lands made a joint ditch across their respective lands which conveyed the water towards the east from Dayton's land across that of Miner, now owned by Martin, and from Miner's land over Porter's land towards an outlet further east. This ditch was from ten to twelve feet wide at the top, from four to six feet wide at the bottom and from one and a half to two feet deep across the land of Porter. In 1900 the owners of these lands made an oral arrangement to lay a tile drain under the ditch, and engaged a surveyor to make plans and apportion the cost of laying the tile to the respective landowners. The sur-

veyor made plans for the improvement and prepared an agreement apportioning the cost to the parties. Porter and Dayton signed the agreement, but it was not signed by the other parties for the reason that they were dissatisfied with the apportionment of the expense. Porter afterwards told Miner that he would go ahead and lay the tile across his own land, and in 1900 he did lay a tile in a trench dug for it in the bottom of the ditch. It is disputed, however, whether that tile was laid up to the line of the land now owned by Martin. Porter testified that it was laid to the division line, but others testified that it was only laid to within about five rods of the line. The evidence shows that the east end of the drain was laid with eight inch tile, and at the west end, where it approached Porter's land, five inch tile was used. The five inch tile was smaller than that provided for in the plans of the surveyor, and it was not laid as deep as was called for by the plans. When Martin bought the Miner land the tile was laid, but the trench dug for it was not filled up at the west end near Martin's land for several months after he purchased, when Porter filled both the tile trench and the open ditch which had been there for over twenty years. There was also proof tending to show that the damages sued for were caused by the building by the owners of the lower land of a slight dam at the line between the two properties. This filling of the ditch by Porter or the building of the dam prevented the water from flowing as it had since the construction of the old open ditch. There was proof that by the filling up of the open ditch or by the dam, water was backed up and stood upon or did not run off of several acres of Martin's land and that it was damaged thereby. Martin did not farm the land but it was rented to J. J. Boudreau for the years 1901 and 1902, and a new lease was made to the same tenant for 1903, which was renewed for 1904. The same tenant was still in the possession of the land when this suit was begun.

It is assigned for error that the court admitted im-

proper evidence on the part of appellee upon the question of damages, and that the court erred in the refusing of proper evidence on the part of appellant. The only evidence offered and admitted concerning the amount of the damages was as to the amount of the damages to the land annually caused by the overflow for the years 1901, 1902, 1903 and 1904. The proof showed that the lease was in writing. The lease itself was not produced and appellee testified that under the lease he was to receive cash rental for the pasture land and one-half of the grain raised on the arable land. Appellee also testified that he was damaged about $75 for the year 1902, $55 in 1903 and more than that sum in 1904. The oral evidence concerning the leasing was properly excluded and the written lease was not offered in evidence.

The appellee it is true did testify that he considered he was injured a certain sum in each year, but he did not show the facts upon which his conclusions were based; and it was necessary that the leases should be in evidence to show what interest if any he had in the lands. The evidence concerning the leasing being excluded, there was then left no proper evidence in the case upon which more than nominal damages could be assessed. If the land was rented for a cash rental then it would seem that it was the tenant that was injured and not the appellee. The proof also fails to show whether the injury was caused by a temporary structure or dam or by a permanent structure. When a new lease was made then the injury had accrued to the reversionary interest, if the injury was of a permanent nature, and damages did not thereafter accrue to the appellee by way of a loss of rentals. If the injury was caused by a temporary dam and not a permanent structure, then the damages were not to the reversionary interest. When damages to land are caused by a nuisance of a permanent character which is properly constructed, or which is treated as permanent by the parties, there can be but one recovery, and the measure of damages in the recovery is the

damages in depreciation to the fair cash value of the land. Chicago & E. I. R. R. Co. v. Loeb, 118 Ill. 203; Kankakee & Seneca R. R. Co. v. Horan, 131 Ill. 288, and cases cited on page 303; 3 Sutherland on Damages 392, and Avery v. Vermont Electric Co., 59 L. R. A. 817, and note on pages 893 and 898. There being no proof in the record authorizing a judgment for more than nominal damages, the judgment for $165 cannot be sustained.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*