No. 1,283.

## The New York, Chicago and St. Louis Railroad Company v. Speelman et al.

**Watercourse.**—*Overflow Water.*—*Surface Water.*—The water of a river overflowing its banks, and not flowing in or confined to any particular or permanent way, is surface water.

**Same.**—*Railroad.*—*Overflow Water.*—*Damages.*—*Special Finding.*—*Recovery.*—That the special findings, in an action against a railroad company by a land-owner for damages for obstructing the natural course of overflow water of a watercourse, are insufficient to entitle the plaintiff to damages, see opinion.

From the Starke Circuit Court.

*J. Morris, R. C. Bell, J. M. Barrett* and *S. L. Morris,* for appellant.

*A. Zollars, A. A. Chapin, G. W. Beeman* and *B. C. Moon,* for appellees.

Lotz, J.—The facts of this case, as found by the trial court, are as follows:

"That the plaintiffs are the owners of the land described in their complaint. That the defendant is a corporation and owns and operates the New York, Chicago and St. Louis Railroad, the line of which extends across Starke county, Indiana, and runs near plaintiffs' said lands, and that the line of said railroad crosses Yellow river, in said county, about three and one-half miles from plaintiffs' lands, and that such road runs in a

northwesterly direction from where it crosses Yellow river, and passes about three and one-half miles east of plaintiff's lands.

"That said railroad north of Yellow river was constructed in 1881, the line of which north of Yellow river passed over a level country, and south and southwest of plaintiffs' lands such country was lower than plaintiffs' lands, and the surface waters from said lands flowed naturally in a westerly and southwesterly direction therefrom. That in the construction of said railroad, Yellow river was crossed by a pile bridge and trestle work, which said pile bridge and trestle work was about 1,800 feet in length. That the main and natural channel of Yellow river where it is crossed by said railroad is about ninety feet in width, and that the trestle work aforesaid extended about 1,700 feet north and west of such main or usual channel. That for the proper construction, maintaining and operating of its railroad it was necessary for defendant to build its railroad over said Yellow river, and to accomplish that end, to build and maintain the bridge specified in plaintiffs' complaint over the same and at the point described in the complaint. That in building said bridge over said Yellow river defendant employed the most skillful and scientific engineers, mechanics and laborers, and said bridge, with its abutments, supports and approaches, were built in the most skillful, scientific and approved manner, and the same, as built, was necessary for the safe operation and maintenance of defendant's railroad in the transportation of its passengers and property.

"That Yellow river has gradually, by the deposit of silt, raised its bed and immediate shore lands until it is higher than the lands north and west of the river, in places, so that at times of usual freshets and floods its waters run over its banks and overflow adjoining lands.

That plaintiffs' lands are about one or two feet lower than the lands immediately along and bordering the channel, and in times of freshets and floods, before the building of the railroad grade, such overflow waters sought and obtained an outlet to the westward and southwestward across the country and across the present line of defendant's road, along natural depressions in the surface and all defined channels, along some of which small ditches had been constructed, into the Kankakee and Yellow rivers in a general westerly and southerly direction.

"That at the time of the construction of said railroad grade, about one and one-half miles west of where said railroad crosses Yellow river, there was such depression or channel, through which the overflow waters of Yellow river, in times of freshets, gathered and run westward, and that said railroad where it crossed said depression or channel, built about fifty feet of pile trestle work to allow such waters to pass under its tracks, and that about one and three-fourths miles northwest of where said railroad crosses Yellow river, there was another such natural depression or channel through which the overflow and gathered waters east of said line of railroad passed in a westerly direction under defendant's track, and the defendant, in the construction of its roadbed, crossed such depression or channel with pile trestle work about one hundred feet in length; that the defendant, in building its embankments, closed up all other depressions in the surface.

"And that afterwards, during the year 1886, in the management and repair of the railroad bed, defendant filled up with earth the trestlework west of the bridge at Yellow river, with the exception of 119 feet immediately over the main or natural channel of the river, and filled in with earth the openings left at such natural depressions and chan-

nels west of the river, by such pile and trestlework which caused all the overflow waters of Yellow river to flow north on the east side of the railroad embankment about four miles, and then pass through a trestlework under defendant's track in a westerly direction to the Kankakee river; that the opening left at the main channel of Yellow river is wider than such natural channel, being about 119 feet, and is the only opening left for the passage of the waters of Yellow river at or near the bridge; that at the time the roadway was built by defendant, in order to prevent the waters of the river in times of overflow from flowing northwest along the line of defendant's railroad, the defendant, commencing at the northwest end of trestlework, immediately north of Yellow river, constructed a levee or wing embankment from the railroad embankment east on a line generally parallel with the river for about 1,000 feet, which embankment is of the same height as the railroad embankment, to prevent overflow waters from destroying its embankment and to turn it into the natural channel; that the waters of Yellow river flow in a westerly direction, and that before the filling in of the trestlework north of the river with earth, in times of freshets and high waters much of the surplus water not contained in the usual and natural channels would pass under the defendant's railroad track at the river through such trestlework for its entire extent. And that the surplus overflow waters would wander northward and westward and would seek an outlet in the Kankakee river, across the country along the natural depressions and channels as aforesaid; that except at times of overflow or high waters such channels or natural depressions were comparatively dry; that the lands under such trestle work at Yellow river as originally constructed, except the channel, were covered with grass, and in some places with brush; that the main or

usual channel of the river is not obstructed by defendant's bridge except by the necessary piling to support the bridge; that the spring of 1892 was unusually wet, and that an unusual amount of rain fell, and that Yellow river rose to an unusual height, and higher than ever before known, and so remained for a long time, to wit, six weeks; and that the overflow waters not being able to pass under the defendant's railroad bridge, backed up behind the levee constructed by the defendant, and the water broke and ran through the levee, and around the east end thereof and thence northwest across the country in a northwesterly direction on the northeast side of defendant's railroad, and was not able to pass south and west of the road till it reached a trestlework four miles from Yellow river, where it passed under defendant's railroad to the Kankakee river.

"That the lands of plaintiffs were overflowed, together with all the lands south and southwest between said lands and said railroad, the waters causing such overflow coming in the main from Yellow river and the general rain all over the country, and that by reason of such overflow, and the time such overflow water remained on said lands, the plaintiffs' crops were destroyed.

"That during the said time the plaintiffs' said lands were so overflowed, a good portion of such overflow waters was held back by the defendant's roadbed and embankments, and prevented thereby from quickly flowing along through the aforesaid natural depressions and channels to the southwestward.

"That the overflow waters of Yellow river did not return to Yellow river, but flowed across the country and entered the Kankakee river three or four miles north of and above the mouth of Yellow river; that such overflow waters on the north and east side of the defendant's railroad embankments north of Yellow river were from

eighteen inches to four feet higher than that at the south
and west side of said embankment during the time of
such overflow; that at the time of the overflow of said
Yellow river and Kankakee and other streams in said
Starke county, the bridge of defendant, with its ap-
proaches, supports and abutments, was in good repair
and condition, but that north of said bridge and off
the right of way of defendant, said Yellow river, for a
distance of from four to six miles, was obstructed with
trees, rubbish, logs and other obstacles; that for weeks
prior to May, 1892, throughout Starke county, Indiana,
and other counties adjoining, there had been an unpre-
cedented steady rain fall, and in consequence thereof a
general flooding and overflowing of said Yellow river.

"That by reason of the filling in of the trestlework at
Yellow river, and the filling in of the natural depres-
sions and wet weather channels northwest of Yellow
river and south and west of plaintiffs' land by the de-
fendant in repairing and improving its embankments
northwest of Yellow river, the overflow waters of the
river in the spring and early summer of 1892 were held
back, and that such back waters added materially to the
overflow of the plaintiffs' land and damage to his crops;
that by reason of such overflowing of the plaintiffs' lands
the wild grass on 280 acres of the plaintiffs' land was
damaged to the amount of $140.  And that sixty tons of
stacked hay belonging to the plaintiffs was damaged to
the value of $180; and that twenty tons of baled hay be-
longing to the plaintiffs was damaged to the value of
$80; that by the filling in of said trestle at the river and
northwest of the river, said defendant's roadbed was
rendered more safe for transportation of freight and pas-
sengers; and that the opening left by defendant's bridge
on Yellow river was sufficient for all its usual and or-

dinary stages, and for all its then known usual and or-
dinary stages.''

Upon these facts the court stated, as a conclusion of
law, that the appellant was liable for the damages caused
by the overflow, and rendered judgment accordingly.
The appellant excepted to the conclusion of law, and it
is insisted in this court that the trial court erred in its
conclusion.

The channel of a river or watercourse is the hollow
bed where the water runs or may run, and the main
channel is that bed over which the principal body of the
water flows.   The appellant had the right to construct
its bridge across Yellow river, but in doing so it had no
right to materially interfere with the flow of water there-
in.    It is apparent from the findings that the main
channel of Yellow river was not obstructed by the ap-
pellant, either by its bridge or by its embankments, to
any appreciable or damaging extent.    But it is very
clear that when floods and freshets caused the water to
overflow its banks, such overflow was obstructed by the
embankments erected by appellant.

Whether or not the appellant is liable for the damages
caused by this obstruction depends upon the nature and
character of the overflowing waters.   If these waters are
to be treated as mere surface waters then the appellant
had the right to ward them off its own premises, and
if any injury was done to appellees' premises it was a
loss for which the law provides no remedy.

It was decided by the Supreme Court of this State in
*Taylor, Admr.,* v. *Fickas,* 64 Ind. 167, that the overflow-
ing waters of a run or watercourse, not confined to a
channel, are mere surface waters.   That case has been
frequently followed by that court and also by this court.
*Jean* v. *Pennsylvania Co.,* 9 Ind. App. 56; *Jacks* v. *Lal-
lis,* 10 Ind. App. 700.

The federal courts and the courts of some of the States take a contrary view or this question.  *Cairo, etc., R. W. Co.* v. *Brevoort,* 62 Fed. Rep. 129.

The waters of a river, so long as they form one continuous body, are, properly speaking, the waters of a watercourse.  If they should become separated and disconnected from the main body and wander about without following any defined way or channel, then they are properly surface waters.  This court, however, is bound by the rule adopted by the Supreme Court of this State.  Under that rule the waters of Yellow river overflowing its banks and not flowing in or confined to any particular or permanent way were mere surface waters.  *Cairo, etc., R. R. Co.* v. *Stevens,* 73 Ind. 278.

If this case does not fall within the rule announced by the Supreme Court, it is because of the finding that the overflow waters, before the construction of the embankments, were gathered in depressions and channels and flowed away.  The findings are indefinite and uncertain as to the nature and character of these depressions or channels.

We think that it can not be seriously contended that the natural depressions, one of which was one and one-half miles and the other one and three-fourths miles west of Yellow river, were channels of that river.  But it is possible for them to have been watercourses, although they were not channels of that river.

If they were watercourses, and were obstructed by the appellant, and the waters thereof thrown back upon the lands of the appellees, the appellant would be liable for the damages, the same as if it had obstructed Yellow river.

This brings us to the consideration of what constitutes a watercourse.

This court, in *Board, etc.,* v. *Castetter,* 7 Ind. App.

309, defined a watercourse as follows: "The word watercourse is a broader and more comprehensive word than river. In its most general sense, it means a course or channel in which water flows. In its legal sense, it consists of bed, banks and water, a living stream confined in a channel, but not necessarily flowing all the time, for there are many watercourses which are sometimes dry."

This definition, so far as it went, was approved by the Supreme Court of this State in *Board, etc.,* v. *Wagner, Admr.,* 138 Ind. 609, the court adding: "The word *living* is here employed in the sense of *permanent* or *continuous,* as used in *Board, etc.,* v. *Bailey, supra,* and *Rice* v. *City of Evansville, supra.*"

There is nothing in the finding to show that the depressions or channels west of Yellow river were living or continuous watercourses, the water flowed in them only when Yellow river overflowed its banks. This happened only in cases of floods or freshets. These depressions or channels did not constitute watercourses within the legal definition above given.

There is nothing in the findings to show that the appellant did anything but that it had a legal right to do.

The court erred in its conclusions of law.

Judgment reversed, with instructions to grant a new trial to appellees if asked; otherwise to render judgment for appellant.

Filed April 24, 1895.