THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD
COMPANY *v.* THE HAMLET HAY COMPANY.

[No. 18,026.    Filed Oct. 26, 1897.    Rehearing denied Jan. 28, 1898.]

RAILROADS.—*Construction of Bridges and Embankments.—Statute
Construed.*—By clause 5 of section 5153, Burns' R. S. 1894, a rail-
road company is empowered to construct its road across a water
course so as not to interfere with the free use of the same, and "in
such a manner as to afford security for life and property;" and pro-
vides that the railroad company shall restore the watercourse "to
its former state, or in a sufficient manner not to impair unnecessa-
rily its usefulness or injure its franchises." *Held,* that the "life
and property" and the "franchises" referred to in the statute are
not those of the railroad corporation, but those connected with the
watercourse.    *pp. 346, 347.*

SAME.—*Bridges and Embankments.—Surface Water.*—Water which
flows down a stream in high-water channels, having well-defined
beds and banks, is not surface water against which a railroad com-
pany, in the construction of its road, has a right to build embank-
ments.    *pp. 347, 348.*

SAME.—*Liable to Landowner for Damages Caused by Obstructing
Water Course.*—Where a railroad company constructs bridge em-
bankments, and thereby obstructs a natural watercourse, the com-
pany is liable in' damages resulting to a landowner; and the fact
that the embankments were built in a careful manner, so as to pro-
tect the charter right of the company is no defense.    *p. 348.*

SAME.—*Construction of Bridge and Embankments.*—It is the duty of
a railroad company in the construction of bridges and embank-
ments to provide for unusual stages of water.    *p. 349.*

SAME.—*Damages for Obstructing Water Course.—When Action Ac-
crues.*—A landowner's right of action against a railroad company
for damages caused by the obstruction of a natural watercourse
accrued at the time the landowner was damaged by the overflow of
water.    *pp. 349, 350.*

APPEAL AND ERROR.—*Interrogatories to Jury.—New Trial.*—Alleged
errors in submitting to the jury certain interrogatories, and in re-
fusing to require more specific answers to others, to be available on
appeal must be assigned as reasons for a new trial.    *p. 350.*

SAME.—*Instructions.*—Where it is not shown that the instructions set

out in the record were all the instructions given, error cannot be predicated on a refusal to give certain instructions requested. *p. 352.*

SAME.—*Excessive Judgment.*—An exception that the judgment is excessive, it being admitted that a judgment for some amount was proper, will not be considered on appeal, unless a motion to modify was made in the trial court. *pp. 353, 354.*

SAME.—*Special Verdict.*—*Modification of Judgment.*—*Review.*—Where a special verdict is returned, and in answer to one interrogatory damages are assessed, and in answer to another the interest thereon is found, any error in the amount of interest is an error of law to be corrected by the court by a modification of the judgment, and could not be reviewed in passing on the action of the court in overruling the motion for a new trial. *p. 354.*

From the Marshall Circuit Court. *Affirmed.*

*John Morris, R. C. Bell, J. M. Barrett, S. L. Morris* and *S. E. Williamson,* for appellant.

*Allen Zollars, C. H. Worden* and *A. A. Chapin,* for appellee.

HOWARD, J.—This was an action by appellee against appellant for damages alleged to have been caused by the obstruction of natural watercourses. It is alleged in the first paragraph of the complaint, that in the year 1881 the appellant constructed its railroad over the Yellow river, a tributary of the Kankakee; that from time immemorial during the springtime and rainy seasons of the year the waters in said river are swollen by rains and freshets, so that the river rises above its ordinary channels and flows in high water channels, having well defined beds and banks, and requires for the free passage of the water a much wider waterway than at other seasons of the year; that at the time of the construction of its said road appellant built a bridge over said river eighteen hundred feet in length across the ordinary channel, and, at a short distance to the west of said bridge, built two other bridges, each fifty feet in length, for the free passage of water running in said high water channels of said river when so swollen by rains and

freshets; that afterwards, in 1886, appellant, unnecessarily and negligently, filled up all the waterways under said bridges with embankments of earth, except the space of one hundred and nineteen feet in length under the longest of said bridges, which space so left was insufficient for the free passage of water when the river was so swollen by rains and freshets as aforesaid; that during the spring of 1892 the water in the river was so increased by rains and freshets that it could not flow through the space left under said bridge, but, by reason of the filling up of said passageway by embankments of earth, the water was obstructed and dammed up so that it overflowed appellee's land, spoiling and rendering worthless the hay and growing grass thereon.

The second paragraph of the complaint differs from the first principally in alleging that the passageways under the smaller bridges, and which were filled up by embankments, were separate and distinct water courses flowing into Yellow river.

It is contended that the complaint is fatally defective, first, "because neither paragraph avers that the manner of crossing Yellow river was not necessary to secure life and property, nor is it averred that the bridge could have been maintained in a different manner without injury to appellant's franchise."

This objection is based, as we think, upon a misapprehension of the provisions of clause five, section 5153, Burns' R. S. 1894 (3903, R. S. 1881), by which clause a railroad corporation is empowered:

"Fifth. To construct its road upon or across any stream of water, watercourse, road, highway, railroad, or canal, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the stream or

watercourse, road or highway thus intersected, to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises."

The "life and property" and the "franchises" referred to in the statute are not those of the railroad corporation, but those connected with the "stream of water, watercourse, road, highway, railroad or canal," across which the corporation constructs its road. The statute forbids the corporation to cross a stream or highway in such a manner as to interfere with the free use of such stream or highway, or in such a manner as to endanger the lives or injure the property of those using or having interests in the stream or highway; and it requires, further, that after the crossing is made the corporation shall restore such stream or highway to its former state, or at least so far as necessary to preserve its usefulness and its franchises. So far as the corporation's own property and franchises, and the safety of its employes and passengers are concerned, the statute was intended to make no provisions. See as to duty to restore stream or highway to its former condition, *Lake Erie, etc., R. R. Co.* v. *Smith,* 61 Fed. 885; *Lake Shore, etc., R. W. Co.* v. *McIntosh,* 140 Ind. 261.

It is next objected that the waters which backed up over appellee's lands were flood waters occurring during a rainy season, and as such were surface waters against which appellant had a right to build its embankments, even to the damage of appellee. There is no doubt that flood water which leaves the channels of a stream and spreads out over the adjacent lands, running in different directions or settling in pools and flats, ceases to be a part of the stream and becomes in effect surface water. Such, however, was not the character of the waters here alleged to have been thrown back upon appellee's land. The com-

plaint says: "From time immemorial, during the springtime and rainy seasons of the year, the waters in said river are swollen by rains and freshets, so that the river rises above its ordinary channels and flows in highwater channels, having well-defined beds and banks, and requires for the free passage of the water a much wider waterway than in other seasons of the year." It was this water, flowing down the stream within the highwater channels, a part of the river, in fact, that was obstructed by the embankments and thrown back upon appellee's land. Besides, the embankments here complained of were not built as levees to keep waters back from flowing upon the builder's own land, but obstructions that prevented the waters from flowing freely down the stream as they would otherwise naturally have done.

So far as concerns the claim made that the embankments were built in a careful manner, and so as to protect the charter rights of the appellant, we may say, as was said in the *Evansville, etc., R. R. Co.* v. *Dick,* 9 Ind. 433, that the embankments may have been erected in a proper manner, so far as appellant's interest is concerned, and still be constructed in such a manner as necessarily to injure appellee. In such case there can be no place for the maxim *damnum absque injuria,* and the appellee must have its right of action for damages.

The third objection to the compaint is, that there is no allegation that the appellee was free from fault in causing the damage done. It may be doubted whether this is such a case as to call for that allegation. This is not such a case as *City of South Bend* v. *Paxon,* 67 Ind. 228. The statement of the injury in this case and of its cause is such as to preclude fault on the part of any one except the party causing the obstruction to the watercourse. As a matter of fact, however, if this

were necessary, the complaint does, in each para-
graph allege that the damage was caused "without
any fault or negligence of the plaintiff."

The objection that there is no allegation that appel-
lant knew or could have known that such floods were
likely to occur, or that there was any lack of diligence
on its part in providing a sufficient outlet for the
water, is equally without pertinency. The complaint
shows that from time immemorial such floods were
liable to occur in the springtime and rainy seasons.
If the appellant did not know this it ought to have
known it. As said in Wood on Railways, section 271,
the company should have exercised "the highest cir-
cumspection" in making provision for unusual stages
of water. See, also, *Bellinger* v. *N. Y. Cent. R. R. Co.*,
23 N. Y. 42.

The sustaining of a demurrer to the fifth paragraph
of the answer is next assigned as error. In this para-
graph it was averred that the appellee was not the
owner of the overflowed lands at the date of construct-
ing the embankments; and that "the complete injury,
if any, was then done, and the right of action, if any,
accrued then." This position is not tenable. The
record does not show any injury caused by the ob-
structions until the spring of 1892. As said in *Sher-
lock* v. *Louisville, etc., R. W. Co.*, 115 Ind. 22, so long as
no injury resulted to appellee it was entirely imma-
terial to it in what manner the bridge was maintained
by the railway company on its own land. The com-
pany was required by law to construct and maintain
its bridges "in such manner as to afford security for
life and property." It was not until the natural flow
of the stream was obstructed in 1892, in such a man-
ner as to damage appellee's property, that a right of
action for damages accrued. It may be very true,
as in the case cited by counsel, *Lake Erie, etc., R. R.*

*Co.* v. *Young*, 135 Ind. 426, 41 Am. St. 430, 58 Am. and Eng. R. R. Cas. 665, that at the time of constructing the embankment under the trestles a suit for injunction might have been brought, to prevent a multiplicity of actions for damages and for other reasons stated in that case. No action for damages, however, could accrue until some damage had been caused.

The jury returned a special verdict in the case, in the form of answers to interrogatories, upon which the court rendered judgment for the appellee. It is urged that the court erred in submitting certain of these interrogatories to the jury, and also in refusing to require more specific answers to others. The acts so complained of, however, occurred during the progress of the trial, and, if erroneous, the court should have been given an opportunity to reconsider them in passing upon the motion for a new trial. The alleged errors ought therefore to have been given as reasons for a new trial, and not, as here, made independent assignments of error. Moreover, we do not find that any of the rulings so called in question were harmful to appellant, if, indeed, in any respect erroneous.

In contending that the evidence does not sustain the verdict, counsel for appellant say: "It was incumbent on appellee to prove the existence of the alleged watercourses, and their obstruction by appellant. All other questions are incidental." In this statement of counsel the extent and character of the evidence required to support the finding of the jury are well indicated. It is enough for us to say as to this, that we have carefully gone over the objections raised by counsel to the sufficiency of the evidence, and find all such objections without merit. There was competent and sufficient evidence to show the existence of the watercourses and their obstruction, as alleged in the com-

plaint. Indeed the very building of the several trestle bridges in the beginning goes very far to establish the existence of the watercourses under each of said bridges. The appellant was at that time evidently of opinion that the 1800-foot bridge, and the shorter bridges then built, were necessary in order to allow the free passage of the waters down the Yellow river and the other watercourses referred to in the complaint. It cannot be questioned that the waters in controversy would all have flowed down through Yellow river and into the Kankakee, as they had done from time immemorial, had it not been for the embankments complained of. That the banks of the stream are not everywhere clearly and sharply defined is not controlling. The character of the country through which the stream flows must be taken into account. Where the country is hilly or rolling, the fall rapid and the soil easily cut and washed there will in general be a deep and well marked channel. Where, however, the country is flat the fall slight and the soil turfy and full of roots and strong grass, there the channel will often be shallow and the sides in many places not sharply defined.

But, as said in *Mitchell* v. *Bain*, 142 Ind. 604, citing authorities, "A stream does not cease to be a watercourse and become mere surface water because at a certain point it spreads over low ground several rods in width and flows for a distance without a defined channel or banks before flowing again in a definite channel. * * * If a watercourse is lost in a swamp or lake, it is still a watercourse if it emerges therefrom in a well defined channel." So, too, it was said in *Macomber* v. *Godfrey*, 108 Mass. 219, 11 Am. Rep. 349, the mere fact that because of the level character of the land the water of a stream spreads over a wide space without apparent banks does not deprive it of its character as a watercourse, provided it usually flows

in a continuous current.    See also *Board, etc.*, v. *Wagner*, 138 Ind. 609.

The Kankakee valley is a nearly level country, the soil generally peaty on the surface, and covered with a strong growth of native grass.    The streams are consequently shallow and sluggish until swollen in the rainy season, when they rise above the usual dry-weather banks and flow in broad, strong bodies down the valley.    Such streams are, however, watercourses quite the same as if they flowed within rocky and unchangeable banks.    It was incumbent on appellant, in the construction of its road, as we have already seen, to take notice of this character of the country, and provide ample accommodations for the free passage of the waters over its right of way at all seasons of the year.    The jury took a moderate view of what was shown by the evidence to be such sufficient passageway for the waters of Yellow river, and fixed it at 500 feet, instead of 119 feet, as left by the embankment complained of.

As to the instructions of the court we need only say that we have gone over them carefully and are impressed with the great care and ability shown in their preparation by the distinguished judge who presided at the trial.    Whether certain instructions requested were properly refused we need not inquire, inasmuch as it is not shown whether the instructions set out in the record were all the instructions given; and in so far, if at all, as the instructions refused were properly applicable, they may have been covered by other instructions given.    Neither need we consider what is said as to the excessive amount of the judgment, on account of interest allowed.    There can be no doubt that a judgment for some amount was proper, and there was no motion to modify the judgment.    *W. U. Tel. Co.* v. *State*, 147 Ind. 274.

Judgment affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM: It was held in the principal opinion that the alleged "excessive amount of the judgment on account of interest allowed" could not be considered, for the reason that there was no motion to modify the judgment. Counsel contend that the error so made, if it were one, could have been considered in passing upon the action of the court ·in overruling the motion for a new trial. That might be true if the question were merely one as to excessive damages, particularly if returned in a general verdict. In this case, however, the verdict was by way of answers to interrogatories, as provided in the act of March 11, 1895 (Acts 1895, p. 248), which required that the jury "find one single fact in answering each of such interrogatories." In the case at bar, the jury found, in answer to one interrogatory, that the damages caused by loss of hay and grass amounted to $4,680. In answer to another interrogatory, the jury found what would be the interest on this sum at six per cent. from the time the damage was done. Certainly a new trial could not change the finding as to this latter fact. It was a mere matter of mathematical calculation. Whether such interest should be added to the damages found for injury to hay and grass was a question to be decided when the judgment came to be entered. In the contention now made, no question is raised as to the correctness of that part of the judgment covering injury to hay and grass. If therefore the judgment were erroneous only by the excess caused by adding interest to the damages, that must be an error to be corrected by motion to modify. The error, if any, was not as to any fact found by the jury, or which could be corrected on another trial, but one of law by

the court to be corrected by a modification of its judgment.

Undoubtedly if the damages found for loss of hay and grass were excessive, the remedy would be by a new trial, and appellant's authority, *Lake Erie, etc., R. W. Co.* v. *Acres*, 108 Ind. 548, would be in point. But it is not contended that this part of the judgment is incorrect, but only that interest should not have been added. "Where any part of a judgment is valid," said this court, in *Bayless* v. *Glenn*, 72 Ind. 5, "it will stand unless proper steps have been taken by objection duly presented to the trial court to secure a modification or amendment, by amending or rejecting the part which is wrong." This ruling was cited with approval by Judge Mitchell, in the *People's, etc., Ass'n* v. *Spears*, 115 Ind. 297. So it was said, in *Wood* v. *State*, 130 Ind. 364, "If the evidence entitled the appellee to some judgment in his favor it cannot be set aside because the court gave too large a judgment, there having been no motion to modify." And in the recent case of *Chicago, etc., R. W. Co.* v. *Eggers*, 147 Ind. 299, citing numerous authorities, the like holding is reiterated. Petition overruled.