Decided 23 January, 1906.

## PRICE *v.* OREGON RAILROAD CO.

83 Pac. 843.

PRINCIPAL AND AGENT—NOTICE TO AGENT—SCOPE OF AUTHORITY.

1. In an action against a railroad company for negligently constructing a fill over a water course and leaving an alleged insufficient drain, because of which water was thrown back on plaintiff's land, declarations made by plaintiff, before the fill had been constructed, to a person who was taking measurements with surveying instruments at the place where the fill was subsequently made, concerning the quantity of water which flowed in the stream, and similar declarations thereafter made to persons at work on the fill, not shown to have any authority from defendant in the matter of planning or constructing the same or determining the size of the drain, etc., are inadmissible.

WATER COURSES—DUTY OF RAILROADS IN BUILDING CULVERTS.

2. It is the duty of a railroad company in constructing a fill across a water course to make sufficient provision for the passage of the water of the stream, and to exercise ordinary skill and knowledge to so construct the work as to allow for the passage of such water as may be reasonably expected to flow in floods shown by experience to be liable to occur.

INSTRUCTIONS SHOULD NOT EMPHASIZE SPECIAL TESTIMONY.

3. Courts should not lay special stress on particular items of testimony in charging juries, or say that a stated result necessarily follows the determination of a particular claim.

For instance: In an action against a railroad company for alleged negligence in constructing a fill through a water course, an instruction that if plaintiff informed defendant's employees that at times the water was hip deep at the place where the fill was constructed, or that the pipe inserted by them for the passage of the water was not in his opinion sufficient, they might consider such testimony in determining whether the company used ordinary care in constructing the drain, and whether it should have reasonably anticipated such a flood as caused the damage, is improper, as giving undue importance to certain testimony and as making the question of negligence determinable from two items of evidence, instead of from a consideration of all the testimony.

INSTRUCTIONS ON IRRELEVANT MATTERS.

4. Instructions to juries should not deal with irrelevant matters, since the result must be confusing.

For instance: Where, in an action against a railroad company for negligently constructing a fill through a water course, it is conceded that neither the embankment of a county road, nor a culvert therein, affected plaintiff's injury, it is error for the court to charge that, in determining whether defendants used ordinary care in determining the size of the fill, the jury may consider, with other matters, the size of the culvert across the road between the fill and plaintiff's residence.

DISTINCTION BETWEEN SURFACE WATER AND STREAM WATER.

5. Water that is diffused over the ground unconnected with a stream is surface water; while the water that is part of the flowing volume is stream water, whether the stage be high or low, within the banks or out along adjacent ground. In this case the water that caused the injury was a continuous flowing volume, and therefore not surface water but flood water.

WATERS—EXTRAORDINARY FLOOD—QUESTION FOR JURY.

6. It is for the jury to say whether a flood is such as ought to have been expected and provided against, or was extraordinary and unprecedented, and therefore such as need not reasonably have been anticipated.

From Umatilla: WILLIAM R. ELLIS, Judge.

This is an action by Thomas J. Price against the Oregon Railroad & Navigation Co. to recover damages for an injury to plaintiff's property and premises by backwater, alleged to have been caused by the negligence and unskillfulness of the defendant company in constructing and maintaining a fill on the line of its road from Pendleton to Walla Walla on and over the channel of Hale Creek, near the town of Weston. Hale Creek is a small stream, about two feet deep and from 8 to 10 feet wide where it flows through plaintiff's premises. It has its origin several miles in an easterly direction, from where it crosses defendant's road and flows through a narrow valley or draw between the hills. It is dry in the summer months, but carries more or less water during the remainder of the year. The plaintiff is the owner of a tract of land through which the creek flows a short distance above the defendant's road. His dwelling house, outbuildings and garden are in the valley, or draw, near the creek and about 280 feet above the road, at which place the valley, or draw, is about 150 feet wide. Between the railroad track and the plaintiff's dwelling is a county road, with a culvert four feet square, for the passage of water. When the defendant's railway was first built, the draw or gorge through which Hale Creek flows was spanned by a trestle 135 feet long and 20 feet high, but in 1901 a fill of earth, having an iron pipe three feet in diameter at the bottom for the passage of the water of Hale Creek, was substituted for the trestle. On the 6th of July, 1904, a severe and sudden thunder and rain storm occurred up the creek above the plaintiff's house, and a large quantity of rain fell in the drainage area, which, finding its way into the stream, caused it to overflow its banks, and, as the water was unable to pass through the drain pipe in the fill on defendant's road, it flowed back upon and overflowed plain-

tiff's garden and lawn and ran into his house, injuring and damaging his carpets, furniture, etc. Being unable to obtain a satisfactory settlement of his damages with the railway company, he brought this action.

The complaint avers that the defendant carelessly and negligently failed to put in a sufficient drain or passage for the water under the fill, and thereby caused it to flow back and overflow his premises, injuring his dwelling house and the furniture therein, his garden, lawn and outbuildings, to his damage in the sum of $2,000, the items of which are specifically set out. The answer admits the existence and location of Hale Creek, but alleges that it is dry the entire year, except during the freshet season, when it usually flows a small quantity of water; that the culvert in the county road and the iron pipe put in by defendant have always been adequate to accommodate the flow of the stream, and are entirely sufficient for that purpose under any and all circumstances which might reasonably have been expected or anticipated; that the storm of July 6, 1904, which caused the damage to plaintiff, was unprecedented and extraordinary in fury and violence, amounting to a cloud-burst, so that for more than two miles up the stream above his house the water became a torrent of great volume and velocity, flowing through the valley or draw in a column two feet in height and down on to the lands of plaintiff without regard to the banks of the stream, carrying great quantities of earth and débris before it, thus causing the greatest and most severe flood ever known in that vicinity; that it thus swept over the lands of plaintiff, and whatever damage occurred to him was caused solely and exclusively by such cloud-burst and unprecedented flood. The reply denies the new matter in the answer, and affirmatively alleges that the culvert in the county road did not affect one way or the other plaintiff's property; that the water would have flowed over the county

road regardless of the culvert, and would not have backed up and injured him by reason of such road; that the storm referred to was a severe electrical storm, such as is liable to occur in the section of the country where Hale Creek has its source, and was no greater than has occurred there within the memory of persons now living in that vicinity, but was of a kind and character against which the defendant should have provided when it assumed to restrict or interfere with the natural flow of the stream. Upon the issues thus joined the cause was tried before a jury, resulting in a verdict and judgment in favor of the plaintiff, and defendant appeals, assigning error in the admission of testimony and the giving and refusal of certain instructions.                      REVERSED.

For appellant there was a brief over the names of *W. W. Cotton*, *Arthur Champlin Spencer*, and *Carter & Raley*, with an oral argument by *Mr. Spencer*.

For respondent there was a brief over the names of *Hailey & Lowell* and *George A. Peebles*, with an oral argument by *Mr. Thomas G. Hailey*.

MR. CHIEF JUSTICE BEAN delivered the opinion.

The plaintiff, as a witness in his own behalf, testified, among other things, that he had lived on Hale Creek and in the house damaged by the flood about 35 years; that the stream dried up about the 4th of July each year, and remained dry until the winter rains, except during storms in the summer time; that the country it drained for four or five miles up the stream was steep and rugged, and was visible from the railroad track; that during the time he had lived on the stream he had seen a great many storms and high waters; that he had seen the stream in harvest dry, and within two hours after a storm came up the water would be knee deep from his yard fence to the hills on the

47 OR.——23

north, but did not run around his house; that he had
known a great many storms of a similar character; that
he had seen more water come down the stream than in
July, 1904, but it did not damage him; that in the winter
time the water sometimes ran out and into his garden and
cut out the soil; that he was at home at the time of the
flood in July, 1904; that the water was able to pass down
the stream and did not reach his house and outbuildings
until it backed up from the railroad fill; that the water
can and did pass over the county road below the culvert
before becoming high enough to fill the culvert; that he
had often seen it do so.

He was also permitted to testify, over defendant's objec-
tion, that before the fill was made by the defendant com-
pany a man, who seemed to be spokesman for a party who
had surveying instruments and were making measure-
ments at the place where the fill was subsequently made,
inquired of him as to his knowledge concerning the quan-
tity of water that came down the gorge or ravine at the
railway crossing, and he told him that he had seen it hip
deep over a space 50 or 60 feet wide at that place, and that
he thought it would take a "pretty big culvert, not less
than 10 feet"; that he did not know whether the party was
an official of the road or not; that he afterward had a con-
versation with parties who were putting in the fill and
whom he supposed were working for the railroad company,
and told them that he did not think the drain pipe used
was sufficient to carry the water. Based upon this testi-
mony, the court instructed the jury that if plaintiff in-
formed the employees of the defendant before the fill was
made that the water had at times run hip deep through
the gulch, or advised its agents that the pipe or conduit
was not large enough, before it was put in place, they
might consider such matters in determining whether the
defendant used ordinary care in fixing the size of the drain

under the fill, and whether it should reasonably have anticipated such a flood as came in July, 1904.

1. The admission of this testimony, emphasized as it was by the instructions based thereon, was, in our opinion, error. There was no proof that the parties with whom the plaintiff talked were officers or agents of the defendant, or had authority to represent it in the matter of planning or constructing the fill, or even that they were its employees, unless that is to be inferred from the fact that they were at the time apparently at work for it. They may have been, for all the record shows, laborers, having nothing whatever to do with the question of determining the size of the drain or the nature or character of the fill.

2. It was the duty of the defendant company in constructing the fill to make sufficient and proper provision for the passage of the waters of the stream, and to that end it was required to bring to the planning and execution of the work the skill and knowledge which are ordinarily practiced in such matters, and to construct it so as to allow for the passage of such water as was known to flow in the stream in times of usual freshets, and such as might have reasonably been expected to in floods which are not usual, but which experience shows might occur at any time: 2 Farnham, Waters, § 569; 13 Am. & Eng. Enc. Law (2 ed.), 690; *Jones* v. *Seaboard Air Line R. Co.* 67 S. C. 181 (45 S. E. 188).

3. If it failed to use such skill, it is liable to those injured by its negligence, but in determining whether it had used reasonable care and prudence in the construction of the work regard must be had to the size and nature of the stream, the character and features of the country drained by it, its liability to overflows, and their probable extent and effect, and not to a single item of testimony. The true test, considering all the circumstances, is, ought a competent and skillful engineer reasonably to have antici-

pated such a flood as caused the damage to the plaintiff and to have made provision therefor? The evidence objected to might, perhaps, have been competent if the persons with whom the plaintiff talked were in fact the agents or employees of the company, acting for and representing it in planning or constructing the fill, as tending to show the knowledge which it had of the character of the stream and the quantity of water carried by it, but the effect of the testimony under the instructions of the court was practically to make it determinative of the question whether the defendant exercised ordinary care and prudence in using the drain or outlet under the embankment. It was singled out from all the rest of the testimony, and the jury advised that if the plaintiff had informed the employees of the defendant (regardless of whom such employees were) that at times the water was hip deep at the place where the fill now is, or that he had told them that the pipe was not, in his opinion, large enough to pass the water, they might consider such testimony in determining whether the defendant used ordinary care in the construction of the drain, and whether it ought to have reasonably anticipated such flood as caused the damage. The practical effect of this was not only to give special importance to the testimony, but that, if plaintiff told an employee or employees of the defendant that the water was hip deep in the stream at times and the conduit as put in was not sufficient to carry or pass that quantity of water, it was insufficient, and the defendant was negligent in using it.

4. The court also instructed the jury that, in deciding whether the defendant used ordinary care in determining the size of the culvert or drain placed by it under the fill, they might consider, along with other matters, the size of the culvert across the county road between the fill and the residence of the plaintiff. It is shown by the evidence, alleged in the pleadings, and admitted by all, that neither

the embankment of the county road nor the culvert therein in any way affected or contributed to the injury to plaintiff. The road embankment was not high enough to cause the water to flow back and overflow plaintiff's land, and but for the fill made by the defendant it would have passed on down the stream. Under these circumstances we can conceive no purpose for the instruction, unless the court intended the jury to use the size of the culvert in the county road as a standard by which to determine the sufficiency of the one used by the defendant. They were, in effect, told that they might consider as evidence of what would be a sufficient culvert the one in the county road, without any proof whatever that it was of the proper size or was put in by a person familiar with the history of the stream or the amount of water necessary to be accommodated. So far as the record discloses, its size and height may have been regulated by a mere matter of convenience in constructing the road, and not in any way by the quantity of water to be accommodated, and therefore permitting the jury to use it as a standard of comparison was error.

5. These considerations lead to a reversal of the judgment, but, in view of another trial, it is deemed proper to consider the contention of the defendant that the water which damaged the plaintiff was surface water, and for that reason it is not liable for causing it to flow back and overflow his premises. There is a sharp conflict in the adjudicated cases in this country as to the law of surface water and the rights and liabilities of conterminous proprietors of land in respect to the obstruction and flow thereof. The courts of many of the States have followed the common law, and held that mere surface water, or such as accumulates by rain or the melting of snow, is to be regarded as a common enemy, and the proprietor of the lower tenement or estate may, if he chooses, obstruct and hinder the flow of such water, and in doing so may turn it back

upon and over the lands of others without liability for injury ensuing from such obstruction or diversion. Other courts, following the doctrine of the civil law, have held that the owner of the upper or dominant estate has a natural easement or servitude in the lower, or servient, one to have all waters accumulating on his land to flow upon and across that of the lower proprietor as it would naturally do, and that the flow of such water cannot be interfered with or obstructed by the servient owner to the detriment or injury of the upper proprietor: *Walker* v. *Southern Pac. Co.*, 165 U. S. 593 (17 Sup. Ct. 421, 41 L. Ed. 837).

The question has never been decided in this State. The court expressly disclaimed doing so in *West* v. *Taylor*, 16 Or. 165 (13 Pac. 665). Nor do we deem its consideration necessary at this time. The waters which caused the injury to the plaintiff were not surface waters, but the flood waters of a natural stream. "Surface water is that which is diffused over the surface of the ground, derived from falling rains or melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to, and does, flow with other waters, whether derived from the surface or springs; and it then becomes the running water of a stream, and ceases to be surface water": *Crawford* v. *Rambo*, 44 Ohio St. 282 (7 N. E. 429). When such water has found its way into a natural stream or water course, and mingles with the waters thereof, it becomes as much a part of the stream as any other particle of water in it, and ceases to possess any of the qualities of surface water. And the mere fact that for the time being the channel of the stream is not sufficient to carry all the water does not change the rule, so long as the water forms one continuous body and flows in the course of the ordinary channel of the stream. As said in *Crawford* v. *Rambo*, 44 Ohio St. 282 (7 N. E. 429): "It is difficult to see upon what principle the flood waters of a river can be likened to surface

water.   When it is said that a river is out of its banks, no more is implied than that its volume then exceeds what it ordinarily is.   Whether high or low the entire volume at any one time constitutes the water of the river at such time; and the land over which its current flows must be regarded as its channel, so that, when swollen by rains and melting snows it extends and flows over the bottoms along its course, that is its flood channel, as when, by droughts, it is reduced to its minimum, it is then in its low-water channel."   If in times of flood any part of the waters of a stream become separated or disassociated from the main body and spreads out over the adjoining country without following any definite water course or channel, it ceases to be a part of the stream and may be regarded as surface water: *New York, C. & St. L. R. Co.* v. *Speelman,* 12 Ind. App. 372 (40 N. E. 541); *New York, C. & St. L. R. Co.* v. *Hamlet Hay Co.,* 149 Ind. 344 (47 N. E. 1060, 49 N. E. 269). But, so long as the waters form one continuous body, flowing in the ordinary course of the stream and returning to the natural channel as they recede, they are, properly speaking, waters of a water course, although not confined to the banks of the stream.

The question has been ably and exhaustively considered, in his usual clear and masterful manner, by Mr. Justice LUMPKIN, in *O'Connell* v. *East Tenn. Ry. Co.,* 87 Ga. 246 (13 S. E. 489, 13 L. R. A. 394, 27 Am. St. Rep. 246), and his conclusion is that whether the flood waters of a stream are to be deemed as part of the stream or mere surface water depends upon the configuration of the country and the relative position of the water after it has gone beyond the usual channel.   "If the flood water," he says, "becomes severed from the main current, or leaves the stream never to return, and spreads out over the lower ground, it has become surface water.   But, if it forms a continuous body with the water flowing in the ordinary

channel, or if it departs from such channel animo revertendi, presently to return, as by the recession of the waters, it is to be regarded as still a part of the river. The identity of a river does not depend upon the volume of water which may happen to flow down its course at any particular season. The authorities hold that a stream may be wholly dry at times without losing the character of a water course. So, on the other hand, it may have a 'flood channel' to retain the surplus waters until they can be discharged by the natural flow." And this is the doctrine of the authorities generally: 30 Am. & Eng. Enc. Law (2 ed.), 324; 3 Farnham, Waters, § 879; *Jones* v. *Seaboard Air Line R. Co.,* 67 S. C. 181 (45 S. E. 188); *Byrne* v. *Minneapolis & St. L. Ry. Co.,* 38 Minn. 212 (36 N. W. 339, 8 Am. St. Rep. 668); *Chicago, B. & Q. R. Co.* v. *Emmert,* 53 Neb. 237 (73 N. W. 540, 68 Am. St. Rep. 602); *New York, C. & St. L. R. Co.* v. *Hamlet Hay Co.,* 149 Ind. 344 (47 N. E. 1060, 49 N. E. 269); *New York, C. & St. L. R. Co.* v. *Speelman,* 12 Ind. App. 372 (40 N. E. 541). There is no contention in this case that the waters which caused the injury to the plaintiff were not flowing in one continuous body, following the course of the ordinary channel of Hale Creek, and they were therefore to be regarded as a part of the stream, and not as surface waters.

6. It is contended on behalf of the defendant that the damage to plaintiff was due to an extraordinary and unprecedented storm which it could not reasonably have been expected to anticipate when constructing its road. Upon that matter there was conflicting evidence, and the question was for the jury, and not the court. In the construction of its road the defendant was required to use reasonable care and skill to avoid unnecessary injury or damage to the plaintiff by reason of freshets in the stream, and also from floods which experience teaches may be expected to occur at any time, but it was not required to

anticipate and use precautions to prevent injury from floods caused by extraordinary and unexpected storms. Whether the storm in question was of the character indicated was a matter for the jury.

There are some other assignments of error in the record, but, as they need not arise on a new trial, it is not necessary to consider them at this time. Judgment reversed, and new trial ordered.      REVERSED.

Mr. Justice HAILEY, having been of counsel, took no part in the consideration of this case.