COUNTY OF SAGINAW v. McKILLOP.

1. WATERS AND WATERCOURSES — DRAINS — RIGHTS OF RIPARIAN OWNERS—QUESTION OF LAW.

The right of large numbers of people, some of whom are riparian owners and some of whom are not, to drain into the upper reaches of a river not in its natural state, but by proposing to change the river bed itself in a very marked degree to the alleged great harm of lower riparian owners and others, by greatly increasing the flow of water, particularly in time of high water, should not be disposed of as a question of law.[1]

2. SAME—DAMAGES—HEARING UPON MERITS.

The elements that enter into the question of damages are so many that the case ought not to be disposed of upon the averments of plaintiffs' bill to restrain the construction of said drain and the motion to dismiss.

Appeal from Saginaw; Mayne, J., presiding. Submitted June 19, 1918. (Docket No. 75.) Decided September 27, 1918.

Bill by the county of Saginaw and others against Alexander H. McKillop, drain commissioner of La-

[1]See note in 24 L. R. A. (N. S.) 903.

peer county, and others, to enjoin the construction of a drain. From an order denying a motion to dismiss, defendants appeal. Affirmed.

*John F. O'Keefe,* Prosecuting Attorney, and *Robert T. Holland,* City Attorney (*Miles J. Purcell,* of counsel), for plaintiffs.

*Theo. D. Halpin, Walter S. Wixson,* and *Charles F. Gates,* for defendants.

MOORE, J.   This is an appeal from an order of the circuit court, in chancery, denying a motion of defendants to dismiss the bill of complaint in this cause, which prays for a permanent injunction restraining the defendant drain commissioners and the defendant contractors from constructing the Flint river drain, a project regularly established and which contemplates the improvement of the north branch of the Flint river lying within that portion of Lapeer county extending from the upper reaches of the stream to a point at or near Columbiaville in said county.

The bill of complaint has the following averments:

"That each of the said plaintiff townships, as well as the plaintiff city of Saginaw, are located upon or adjacent to the Saginaw river and the Flint river in Saginaw county, and the said Flint river and Saginaw river traverse the said plaintiff county of Saginaw. That the said plaintiff the Henry Passolt Company is the owner of property adjacent to the said Saginaw river, as above described, and the said plaintiff Horace E. Sloan is the owner of property lying adjacent to the said Flint river, as above described.

"8. The plaintiffs further allege that the Saginaw river is formed in Saginaw county a short distance above the city of Saginaw, by the confluence of the Cass river, Flint river, Shiawassee river and the Tittabawassee river, and that said Saginaw river thereafter traverses Saginaw and Bay counties to Saginaw Bay, a distance of about 17 miles, and that said Saginaw river, together with the rivers above named

and their respective tributaries, drain the watershed in the eastern part of the lower peninsula of Michigan, containing upwards of 6,000 square miles. That the Flint river, one of the streams forming the said Saginaw river, traverses the counties of Saginaw, Genesee, Lapeer, Tuscola, and Sanilac. That the said Saginaw river, which is the outlet of the system above referred to, runs through a flat territory so that the bottom of the river throughout the whole length of 17 miles or thereabouts is practically level. Said river, however, during normal periods of the year affords an adequate outlet for the waters naturally and normally flowing therein from the streams and tributaries whose confluence form said river. * * *

"11. These plaintiffs allege that on February 5, 1914, a petition bearing date July 9, 1913, was filed in the office of the drain commissioner of Lapeer county, petitioning and applying for the construction of a drain to be known as 'Flint river drain' and providing for the deepening, widening and improvement of the north branch of the Flint river, a distance of, to wit, 24 miles. That the first order of determination upon said application was entered October 19, 1914, and filed on the same date; that the final order of determination was entered on February 4, 1916, and filed on the same date; that said final order of determination was signed by Mr. Alexander H. McKillop, county drain commissioner of Lapeer county, who is made defendant herein; by Albert Hunter, drain commissioner of Tuscola county, who is made defendant herein; and by Stewart D. Nicol, county drain commissioner of Sanilac county, who is also made a defendant herein. That on said February 4, 1916, by action of the said county drain commissioners in joint session, the expenses of the construction of said 'Flint river drain' were apportioned between the three counties alleged to be interested therein as follows: * * * .

"That the width of ground proposed to be condemned for the excavation of said drain and the deposition of earth is 200 feet along the course of said drain, being 100 feet on each side of the center line thereof. That the total length of said drain as proposed is 7,568 rods, or 23 miles and 208 rods. That

beginning at station O, or the outlet, so-called, of said drain, the width of bottom excavation is 40 feet, and the width of surface excavation is 60 feet. That said dimensions are the same until station 322 is reached. Beginning with station 323, the width of bottom excavation is 40 feet, and the width of surface excavation is 50 feet, which dimensions continue to station 616. Beginning with station 617 the width of bottom excavation is 30 feet, and width of surface excavation is 40 feet, which dimensions continue to station 650. Beginning with station 651 the bottom excavation is 20 feet, and surface excavation is 30 feet, which dimensions continue to station 915. Beginning with station 916 the width of bottom excavation is 16 feet and width of surface excavation is 26 feet, which dimensions continue to station 946 which is the beginning of upper end of said proposed drain. That the depth of actual cut in feet and inches ranges throughout said drain from 15.6 feet through the length of the drain.

"13. These plaintiffs further allege that the territory proposed to be drained by the construction of the aforesaid 'Flint river drain' and which territory is proposed to be assessed for benefits for the construction of said drain, embraces 132,000 acres.   *   *   *

"15. These plaintiffs further allege that if said 'Flint river drain' is allowed to be constructed, that it will greatly increase the flow of water onto these plaintiffs, particularly in time of high water. That the construction of said drain will increase the amount of flood waters poured upon these plaintiffs and by thus raising the amount of water will increase the size of the district flooded in time of high water and will extend the length or period of the flood in point of time by adding to the water thereof. That the construction of said drain will not only increase the amount of water coming down the Flint river, but by reason of the deepening, widening and straightening of the channel of the Flint river within the limits of said drain proposed to be constructed, will greatly increase the rapidity of the flow thereof, thus increasing the height of the flood upon these plaintiffs. That if said drain is constructed it will cause these plain-

tiffs great, untold and irreparable damage by tearing out and destroying the county roads and county bridges of said county of Saginaw, adjacent to the said Saginaw and Flint rivers; by washing out and destroying the highways, bridges, and culverts owned by the plaintiff townships adjacent to the said Flint and Saginaw rivers, and by washing out and destroying and injuring the bridges and approaches thereto, the streets, pavements, sewers, gutters, water mains and water works and appurtenances thereto owned by the said city of Saginaw across, adjacent to, and in the vicinity of the said Saginaw river; by flooding and destroying the farm lands, buildings, and property of the said Horace E. Sloan, and by flooding and destroying the property, buildings, machinery, and merchandise of the said the Henry Passolt Company."

The defendants answered the bill of complaint admitting that the proposed drain was to be constructed as stated, but denied that any such disastrous results as were averred in the bill of complaint would follow.

Accompanying the answer was a motion to dismiss the bill of complaint for many reasons; the important ones stated are:

1. That there is no right of priority in the use of a river for drainage purposes, plaintiffs gaining no rights over defendants by first constructing their sewers, drains and ditches.

2. That plaintiffs have no right that any court should protect in the construction of bridges, sewers, and highways which interfere with the passage of the waters from above, either at normal or flood times.

3. The prime natural use of a river is a carrying away of the water from the higher parts of the country, and not for bridges and highways which may serve to impede the natural use of such streams.

4. That the attempted monopolization of the Saginaw river by plaintiffs is not only an interference with natural and legal rights, but conflicts with sound public policy.

5. The Saginaw river is a navigable stream, so recognized by the Federal government and this Commonwealth, with established dock lines, floating large

freighters and traversed by steamships of thousands of tons burthen, and having capacity in depth to accommodate all craft afloat upon the Great Lakes.

6. The capacity rule does not apply to Saginaw river.

The motion to dismiss was overruled and the case is brought here by appeal.

We quote from one of the briefs:

"Inasmuch, therefore, as the bill of complaint in this case cannot be amended, any new original bill drafted, or any proofs given that will entitle plaintiff to any part of the relief sought, it would be useless to put the parties to the needless expense of long weeks of taking testimony to make volumes of matter to cumber the records of this court in useless litigation."

This position is taken upon the theory that the proposed improvement is a lawful one, and if, as a result of the making thereof, harm comes to those individuals or municipalities situated on the lower reaches of the river, that they are remediless. Counsel cite and quote from many cases, among them *Crawford* v. *Rambo,* 44 Ohio St. 282 (7 N. E. 429) ; *Eastern Oregon Land Co.* v. *Irrigation Co.,* 201 Fed. 203 (119 C. C. A. 437) ; *Cairo, etc., R. Co.* v. *Brevoort,* 62 Fed. 129 ; *New York, etc., R. Co.* v. *Hamlet Hay Co.,* 149 Ind. 344 (47 N. E. 1060, 49 N. E. 269) ; *Kankakee, etc., R. Co.* v. *Horan,* 131 Ill. 288 (23 N. E. 621) ; *Chicago, etc., R. Co.* v. *People,* 212 Ill. 103 (72 N. E. 219) ; *Mason* v. *Fulton County Com'rs,* 80 Ohio St. 151 (88 N. E. 401, 24 L. R. A. 903, and note) ; *Mizell* v. *McGowan,* 129 N. C. 93 (39 S. E. 729) ; *Waffle* v. *Railroad Co.,* 53 N. Y. 11, counsel quoting from the last named case as follows:

"This gave no right of action to the plaintiff. The defendant had an absolute right to drain the surface water upon its land into the stream which was its natural outlet through ditches constructed upon

its own land, although the quantity of water in the stream was thereby increased in times of high water and diminished at other times (Angell on Watercourses [6th Ed.], §§ 108a to 108s). The authorities of this country and England upon this subject are collected and revised by the author, and clearly establish the right claimed by the defendant. (*Goodale* v. *Tuttle*, 29 N. Y. 459; *Rawstron* v. *Taylor*, 11 Exch. 369; *Gannon* v. *Hargadon*, 10 Allen [Mass.], 106; *Miller* v. *Laubach*, 47 Pa. 154.) A proprietor having the right to reclaim his land by draining the surface water therefrom by ditches discharging into a stream running thereon which is the natural outlet for the water, the object of doing so, whether for the erection of buildings, agriculture or constructing a railroad thereon, is wholly immaterial. He may so drain whenever disposed to do so, irrespective of the object."

Counsel say Michigan is in harmony with these cases. We quote from the brief of counsel:

"Michigan has adopted this rule, as appears from *Boyd* v. *Conklin*, 54 Mich. 583; *Leidlein* v. *Meyer*, 95 Mich. 586; *Horton* v. *Sullivan*, 97 Mich. 282; *Launstein* v. *Launstein*, 150 Mich. 524, as have also the States of Alabama, California, Illinois, Iowa, Louisiana, North Carolina, Ohio, Pennsylvania, South Carolina, and Tennessee, and some other States.

"The application of the rule was early applied in Michigan in the case of *Treat* v. *Bates*, 27 Mich. 390, where Judge CAMPBELL in the opinion said:

" 'There can be no doubt of the right of the riparian owner to drain his own land through his own land into the adjoining stream. And it is equally clear that unless he has parted with it, he has the right to the stream in its natural flow, and a right to prevent any such interference with the natural flow as will work material injury to any of his legal privileges. It can make no difference whether the injury to his premises will be greater or less than if he had chosen to leave them in a state of nature if the encroachment is not warranted. He has a full claim to be protected in any lawful use of his own possessions.'

"The court applied the rule as heretofore stated in *Leidlein* v. *Meyer*, *supra*, wherein it is stated in the opinion:

" 'As already intimated, we think the proofs hardly sustain the allegation of a well-defined watercourse. If there was such a watercourse then the plaintiff's right to its use under all the authorities would be undoubted. * * * Under it (the declaration) a recovery could be had whether the proofs showed a natural watercourse, well-defined, or whether it was an artificial one to which the plaintiff had obtained a right by user, or whether there was a natural flow over land without a channel, natural or artificial.' "

An examination of these cases will show that they do not meet the case stated in the bill. If the defendants were riparian proprietors who were simply draining their lands for purposes of agriculture, health, or other lawful purposes into a natural stream there is no doubt the authorities would justify them in doing so. In the instant case large numbers of people, some of whom are riparian owners and some of whom are not, are proposing to drain into the upper reaches of a river not in its natural state, but they are proposing to change the river bed itself in a very marked degree, and, the plaintiffs say, to their great harm. We do not think such a situation can be disposed of as a matter of law. At least we have had no authority called to our attention that warrants such a disposition of the case.

Counsel say there is another proposition that will sustain the motion to dismiss; we quote from the brief:

"Less than three per cent. of the flood waters at Saginaw come from the Flint river drainage district. The improvement could not possibly increase the flow more than two per cent., and in all probability the increase, if any, would be much less than one per cent. To say that such a small per cent. will cause a merciless devastation and utter destruction of large portions of the city and county of Saginaw goes far beyond the bounds of reason, and such assertions are not facts which bind the defendants or the court on this hearing. The bill alleges that 132,000 acres are to be drained by the proposed improvement. It also

shows that the watershed draining through Saginaw river comprises upwards of 6,000 square miles. It thus appears that the drainage district is only about one-thirtieth of the watershed of the Saginaw river. The natural flow of Flint river in normal times and in times of freshets is now running into the Saginaw river, and it is only the increased flow over and above what it now is, that is, or can be, involved in this litigation. No inference of more than nominal damage can reasonably be drawn from the facts alleged."

There are so many elements that enter into the question of when damage will be caused by an augmentation of the flow of water or what will be the effect of changed conditions, that we are not inclined to dispose of the case upon the averments of the bill of complaint and the motion to dismiss, but think the case should be heard after the proofs are taken.

The order overruling the motion to dismiss is affirmed, with costs, and the case will be remanded for further proceedings.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.