(No. 2788—

EDWIN KRUG, CHESTER STRADER, FRANK POOLE, JOHN A. WILLIAMSON, CHAS. DALTON, E. F. HENDRICKS, BOYD RAINS, HENRY SAMS, GERALD A. DENTON, JOHN L. STRADER, T. H. LIPE, GABE HENSON, CHARLEY GRIGGS, CHARLES SNELL, R. M. JEFFRIES, J. A. LINDSAY, CHARLIE FISHER, HARRY FISHER, WILL MILLER, E. J. McMILLAN AND JOHN C. BISHOP, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed April 11, 1939.*

J. KELLY SMITH and M. C. COOK, for claimants.

JOHN E. CASSIDY, Attorney General; GLENN TREVOR, Assistant Attorney General, for respondents.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

On December 28th, 1935 the first thirteen of the above named claimants filed their claims herein. By amendment filed January 15th, 1936, the other claimants, eight in number, were added as parties to this proceeding.

The original complaint, together with the amendment of January 15th, 1936, alleges in substance as follows:

1. That prior to the spring and summer of 1935 the several claimants were in the possession, as tenants, of certain premises on which they were growing corn and other farm products.

2. That in 1921 the Olive Branch Drainage District was organized; that the lands farmed by the several claimants herein drained into the ditches of such District.

3. That the outlet of said Drainage District was into Horseshoe Lake, which was near and adjacent to the land occupied by the several claimants herein; that upon the creation of said Drainage District, the land occupied by the several claimants was drained in and through the channels of

said Drainage District in such manner that the several claimants raised large crops of corn and other farm products upon such land prior to 1935.

4. That during the year 1931 the State of Illinois negligently made and constructed, and have since that date maintained, a large earth and concrete levee, embankment, or dam, with iron screening thereon, across the outlet of said Horseshoe Lake; that since the construction of such levee, embankment or dam, the respondent has maintained a game preserve in said Horseshoe Lake and the land adjacent thereto.

5. That during the year 1935 the several claimants had planted some corn, and were preparing the land for additional planting; that the waters flowing into said Horseshoe Lake and against said dam backed up and overflowed the land of the claimants, and remained on said land in such manner that the corn planted by the claimants was damaged, and that portion of the land which was being prepared for planting became and was unplantable.

6. That in consequence of the negligent construction of the aforementioned embankment or dam across said Horseshoe Lake, the corn planted by the several claimants was greatly damaged and destroyed, and the land which had been prepared for planting was damaged to such extent that the several claimants were unable to produce the usual crop therefrom, whereby the several claimants sustained damages in various amounts, aggregating the total sum of $18,496.00.

On March 24th, 1938, pursuant to leave of court theretofore obtained, the claimants amended their complaint by striking out the words "negligently," "negligence" and "negligent," wherever such words appeared in the several counts of the complaint.

The case now comes before the court at the conclusion of the claimants' testimony, on the motion of the Attorney General that judgment be entered in favor of the respondent, upon the ground that the evidence in the record does not justify an award in favor of any of said claimants.

The evidence discloses that all of the claimants except T. H. Lipe and R. M. Jeffries, were tenant farmers during the year 1935 and prior years, and that said Lipe and Jeffries owned the farms which they operated.

The damages claimed by all of the claimants except Lipe are for a loss of crops for the year 1935; Lipe claims similar damages for 1935 as well as for 1933 and 1934.

The evidence in the record regarding the dam and embankment in question is somewhat meagre but clearly shows that such dam and embankment extend across the outlet of Horseshoe Lake a distance of about one-eighth of a mile; that the embankment is constructed of earth; that the dam is constructed of concrete, and has iron gates; that it is six and one-half feet high up to the spillway, and has a wire screen three feet high over the spillway; that it was constructed for the purpose of creating a fish and game preserve in Horseshoe Lake.

The original complaint herein, as well as the amendment adding additional parties plaintiff, was based upon the negligent construction and subsequent maintenance of the embankment and dam in question. By the amendment filed March 24th, 1938, the several claimants altered their position, and by such amendment eliminated their previous charges of negligence in the construction of such dam and embankment.

From the Brief and Argument of counsel for the several claimants, it appears that they now base their right to an award upon some one or more of the following grounds, to wit:

1) Negligence of the respondent in the operation of the gates in the dam.

2) That the respondent failed to exercise ordinary care in devising the plans for the dam in question, and that by reason thereof the claimants sustained the damage complained of.

3) Equity and good conscience.

4) The provisions of Section 13 of Article 2 of the Constitution, to the effect that private property shall not be taken or damaged for public use without just compensation.

The above contentions will be considered in the order named.

## I.

If there were any liability on the part of the respondent for negligence in the operation of the gates, it would necessarily have to be based upon the doctrine of respondeat superior. There can be no question but what the State, in the creation of a fish and game preserve, for the people of the State, is engaged in a governmental function.

It is the well-settled law of this State that in the exercise of its governmental functions, there is no liability on the part of the State for the negligent acts of its servants or agents under the doctrine of respondeat superior, in the absence of a statute making it so liable. *Minear* vs. *State Board of Agriculture*, 259 Ill. 549; *Gebhardt* vs. *Village of LaGrange Park*, 354 Ill. 234; *City of Chicago* vs. *Williams*, 182 Ill. 135; *Hollenbeck* vs. *County of Winnebago*, 95 Ill. 148; *Horney, et al.* vs. *State*, 9 C. C. R. 354; *Titone* vs. *State*, 9 C. C. R. 389.

## II.

The general rule with reference to liability for defective plans is stated in 43 Corpus Juris, page 952, Section 1730, as follows:

"In the making and adopting of a plan for a public work or improvement a municipal corporation acts in its judicial, discretionary, and legislative capacity, and hence is not liable for injuries which result only from a defect in such plan."

The same rule is set forth in 19 R. C. L., page 1091, Section 376.

The rule as above set forth is with reference to municipal corporations, but applies with even greater force to the State, for the reason that the doctrine of respondeat superior applies in many cases to municipal corporations where it would not apply under similar facts to the State.

The rule as above set forth has been recognized in numerous cases in this State, although some of the cases which have stated the rule have failed to apply the same by reason of the facts in the particular case. See *City of Chicago* vs. *Norton Milling Co.*, 97 Ill. App. 651; *City of Chicago* vs. *Seben*, 165 Ill. 371; *Hanrahan* vs. *City of Chicago*, 289 Ill. 400.

## III.

The liability of the State in any case, solely on the grounds of equity and good conscience was exhaustively considered by this court in the case of *Crabtree* vs. *State*, 7 C. C. R. 207, in which case, after reviewing the authorities on the subject, we arrived at the following conclusion, to wit:

"That Section four (4) of paragraph six (6) of the Court of Claims Act, which provides as follows, to-wit: The Court of Claims shall have power: 'to hear and determine all claims and demands, legal and equitable, liquidated

and unliquidated, ex contracto and ex delicto, which the State as a sovereign commonwealth, should, in equity and good conscience, discharge and pay'; merely defines the jurisdiction of the court, and does not create a new liability against the State, nor increase or enlarge any existing liability; that the jurisdiction of this court is limited to claims in respect of which the claimant would be entitled to redress against the State either at law or in equity, if the State were suable; that this court has no authority to allow any claim unless there is a legal or equitable obligation on the part of the State to pay the same, however much the claim might appeal to the sympathies of the court; that unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the principles of equity and good conscience to secure such an award."

The question was again considered by the court in the case of *Titone, et al.* vs. *State,* 9 C. C. R. 389, in which additional authorities were cited, and the decisions of the courts of other States were reviewed. Upon such review the decision in the Crabtree case was adhered to, and the same has been followed consistently since that time.

## IV.

Section 13 of Article II of the Constitution of 1870 provides that private property shall not be taken or damaged for public use without just compensation.

Under the constitutional provision, the right of the claimants in this case to an award is not dependent upon any negligence on the part of the State. If the claimants bring themselves within the constitutional provision, as construed by the courts, they are entitled to an award regardless of whether there is any negligence on the part of the respondent.

The question as to whether private property has been taken or damaged for public use in a given case, within the meaning of the constitutional provision, is not always free from difficulty. Not every person whose property has been damaged is entitled to be compensated therefor. The owner's right to compensation must be determined in accordance with the rules of law and of legal procedure. Cases involving claims for damages for the overflow of lands resulting from the construction of dams, embankments, and other structures, have been before our courts many, many times since the adoption of the Constitution of 1870, and certain principles of law relating thereto were considered well settled by our Supreme Court as far back as 1895.

In the case of *City of Centralia* vs. *Wright,* 156 Ill. 561 (decided 1895), the plaintiff sought to recover damages to certain lands owned by him, resulting from the construction of a dam across the non-navigable stream known as Crooked Creek, whereby water was set back upon his premises.

On the trial in the Circuit Court it was contended by the defendant that the plaintiff could only recover such damages as had been sustained up to the time the suit was commenced, while on the other hand, plaintiff insisted he was entitled to recover in the one action all damages for the past, present and future.

In considering the question, the court said (page 565):

"Whether the recovery shall be confined to such damages as had been sustained at the time the action was brought, or would include all past, present and future damages, depends upon another question, and that is, whether the injury is permanent in its nature or merely of a temporary character. If the former, all damages may be recovered; if the latter, only such damages as had accrued up to the time the action was brought."

After reviewing a number of cases, the court said:

"There are many other cases where this same doctrine has been laid down, but the law in this State is so well settled that a reference to other cases is not deemed necessary. * * * It is not necessary to establish the fact that the structure erected by the city shall continue forever in order to determine that the structure is permanent. It is enough that the city had the legal right to erect and maintain the system of waterworks perpetually. * * * We think, therefore, the erection of the dam which caused the damages was a permanent structure, and the Circuit and Appellate Courts properly held that damages past, present and prospective were recoverable."

The law as laid down in the City of Centralia case has been approved and followed in numerous cases since decided, and must be considered as the settled law of this State. See *North Shore Street Ry. Co.* vs. *Payne,* 192 Ill. 239; *Suehr* vs. *Chicago Sanitary District,* 242 Ill. 496; *Bernhardt* vs. *B. & O. S. W. R. R. Co.,* 165 Ill. App. 408; *Wheeler* vs. *Sanitary District,* 270 Ill. 461; *Holm* vs. *County of Cook,* 283 Ill. App. 190.

From a consideration of the foregoing authorities it appears that in all cases involving claims for damages as the result of the obstruction of water courses, the first question for consideration is whether the obstruction in question is a permanent structure, or whether it is temporary or transient. If it is a substantial structure, constructed pursuant to lawful authority and in an ordinarily careful and prudent manner, it is considered permanent. If it is constructed without lawful authority, or in negligent manner, it is considered

temporary or transient. If the structure is a permanent one, and damages result therefrom, there is but one right of recovery, and such right is in the owner of the premises at the time of the construction of the structure, and does not pass to the grantee of such owner. In such case the measure of damages is the difference between the fair cash market value of the property prior to the making of the improvement, and the fair cash market value thereof after the making of the improvement and as affected by it. If the structure is temporary or transient, successive actions may be maintained by the party injured.

The identical question here involved was considered in the case of *I. C. R. R. Co.* vs. *Ferrell*, 108 Ill. App. 659. That was a proceeding by Ferrell to recover damage to growing crops, resulting from overflow alleged to have been caused by the Railroad Company in obstructing the natural flow of water through Drury Creek. In that case the court said (page 666):

"Appellant insists that appellee has no right of action to recover damages, although by obstructing Drury Creek, appellant may have caused it to overflow the land described in the declaration; that under the evidence, if appellant is liable at all, it is for permanent injury, and that for such injury there can be but one recovery, and that by the owner of the land.

"This defense is based upon the proposition that the alleged obstructions were lawfully built with reasonable care, and for legitimate railroad use, and are permanent in their character. It is evident from an examination of appellant's charter, as stated before, that the cutting of the channel for Drury Creek on its own right-of-way, the building of a dam across this channel to secure water for its own use, and the bridging of this creek, were within its granted powers, and are, therefore, not unlawful.

"It is not alleged, nor is it proved, that these acts were not done with reasonable care and were not for proper railroad uses.

"The law is well settled in this State, that a railroad company, authorized by its charter, to construct and maintain its road, when it does so skillfully and with reasonable care, and for proper railroad uses, although it may in so doing, injure adjacent property, is not a nuisance that can be abated. It is well settled also, that an injury to property thereby caused, is to be treated as a permanent injury for which but one recovery can be made by the owner of the land, and that the measure of damages is the decreased value of the property, and that a right of action for such damages does not pass to a subsequent grantee of the owner, and that the statute of limitations begins to run from the date of the existence of the causes which produced the injury. * * * These decisions, and others that might be cited, while holding that but one recovery can be maintained by the owner of land injured by lawful and permanent causes, do not hold that a tenant for a term of years whose leasehold estate is lessened in value by reason of such permanent causes, put in operation during his term, may not recover

for damage to such estate. We see no valid reason why he should not recover.

"But applying the principle that the owner can recover in but one action, and that for depreciation in the value of the realty, the tenant could recover in but one action, and that for the damage to his leasehold estate.

"It is also well settled, that a tenant leasing land which is subject to recurring injury from overflows, and damage to crops occasioned by lawful and permanent causes existing when he leased the land, is a volunteer, taking it subject to such damages and with no right of action to recover for the same."

"*If a right of action does not pass from the owner to a subsequent purchaser, it follows by analogy, that a right of action in the landlord does not pass to his tenants*"

and on page 670:

"The elevation of the dam which appellee testifies caused the overflow having been made in 1893, if appellee remained on the land as tenant from year to year during the years 1896 and 1897, in which years he claims to have been damaged, he was for those years a volunteer holding over, subject to such damages as he might suffer."

In the case of *Horney, et al.* vs. *State*, 9 C. C. R. 354, the claimant sought to recover damages for loss of crops during the period of five years prior to the filing of the complaint, as the result of water standing or remaining on her land by reason of the construction of a hard-surfaced highway. In that case the claimant acquired title after the completion of the improvement. We found that the improvement in question was a permanent improvement, and that the right of action was in the owner of the property at the time of the making of the improvement; that there could be but one recovery, and that such recovery should include all damages, past, present and future; that a subsequent alienee of the property took the same as it existed at the time of the conveyance, and had no right of action for damages resulting from the improvement and accruing after the conveyance.

The embankment and dam in the case now on trial was constructed by the State pursuant to lawful authority. The complaint as amended does not allege, and the evidence does not disclose, any negligence in the construction of such improvement. It is a substantial structure, and under the authorities above cited, must be considered as a permanent structure. Consequently, there can be but one recovery for damages resulting from the construction of such dam or embankment, and such recovery must be by the owner of the land at the time of the construction of the improvement, and must include all damages, past, present or future, resulting from such construction.

As stated in the case of *I. C. R. R. Co.* vs. *Ferrell, ante,* if the right of action for damages does not pass from the owner to a subsequent purchaser, a right of action in the landlord does not pass to his tenant.

All of the claimants except T. H. Lipe and R. M. Jeffries being tenants who came into possession of the land after the making of the improvement, took it as it was, and have no claim for damages to their crops.

The claimant, R. M. Jeffries, acquired his property subsequent to the construction of the dam, and consequently has no right of action even for injury to the land.

The claimant, T. H. Lipe, is the owner of the land for which he claims damages, but the measure of his damages is the difference between the fair cash market value of the property prior to the making of the improvement, and the fair cash value thereof subsequent to the making of such improvement, and as affected by it. There is no evidence in the record as to the fair cash market value of his property, either before or after the making of the improvement, and consequently there is no basis for an award to him.

The motion of the Attorney General must therefore be sustained, and the claim of the several claimants herein is dismissed.